## KELLER *v.* ASHFORD.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 3.   Argued October 15, 16, 1888. — Decided March 3, 1890.

Upon appeal from a judgment of the Supreme Court of the District of Columbia in general term, affirming a judgment in special term, dismissing a bill in equity founded upon a contract bearing interest, the sum in dispute at the time of the judgment in general term, including interest to that time, is the test of the appellate jurisdiction of this court.

A recorder's copy of a deed is competent and sufficient evidence of its contents against the grantee in favor of a person not a party to it, after the grantee and a person who procured it to be made and to whom it was originally delivered have failed to produce it upon notice to do so.

In a deed of real estate, "subject, however, to certain incumbrances now resting thereon, payment of which is assumed by the grantee," and containing a covenant of special warranty by the grantor against all persons claiming under him, the clause assuming payment of the incumbrances includes existing mortgages made by the grantor, as well as unpaid taxes assessed against him.

The grantee named in a deed of real estate, by the terms of which he assumes the payment of a mortgage thereon, is liable to the grantor for a breach of that agreement, although he is not shown to have had any knowledge of the deed at the time of its execution, if after being informed of its terms he collects the rents and sells and conveys part of the land.

An agreement in a deed of real estate, by which the grantee assumes the payment of a mortgage made by the grantor, is a contract between the grantee and the mortgagor only; and does not, unless assented to by the mortgagee, create any direct obligation, at law or in equity, from the grantee to the mortgagee.   But the mortgagee may avail himself in equity of the right of the mortgagor against the grantee.   And if the mortgagee, after the land has been sold under a prior mortgage for a sum insufficient to pay that mortgage, and after he has recovered a personal judgment against the mortgagor, execution upon which has been returned unsatisfied, brings a suit in equity against the grantee alone, and the omission to make the mortgagor a party is not objected to at the hearing, it affords no ground for refusing relief.

This was a bill in equity by Henrietta C. Keller, the holder of a promissory note for $2000, made by one Thompson, secured by his mortgage of land in Washington, against Francis A. Ashford as grantee of the land subject to this mortgage, and who by the terms of the deed to him assumed payment of incumbrances on the land. The bill prayed for a decree in the plaintiff's favor against Ashford for the amount of that note, and for general relief. The case was heard upon pleadings and proofs, by which it appeared to be as follows:

On August 17, 1875, Thompson, being seised in fee of lot 5 in square 889 in the city of Washington, conveyed it to one Rohrer, by a deed of trust in the nature of a mortgage, to secure the payment of Thompson's promissory note of that date for $1500, payable in three years with interest at ten per cent, held by one Harkness.

On February 21, 1876, Thompson conveyed the same lot by like deed of trust to one Gordon, to secure the payment of Thompson's note of that date for $2000, payable in one year, with interest at eight per cent yearly until paid, to the order of Moses Kelly; and Kelly endorsed this note for full value to the plaintiff.

On January 1, 1877, Thompson, at the instance and persuasion of Kelly, executed and acknowledged and delivered to Kelly a deed, expressed to be made in consideration of the sum of $4500; conveying this lot, together with lots 6, 7 and 8 in the same square (each of which three other lots was also in fact subject to a mortgage for $2000) to Ashford in fee, "subject, however, to certain incumbrances now resting thereon, payment of which is assumed by said party of the second part;" and containing covenants by the grantor of warranty against all persons claiming from, under or through him, and for further assurance. At the date of this deed, the only incumbrances on the land conveyed were the five mortgages above mentioned, and some unpaid taxes assessed against Thompson while owner of the land. On January 22, 1877, this deed, together with a notary's certificate of its acknowledgment by the grantor, was recorded in the registry of the District of Columbia.

At the taking of the depositions before the examiner, the plaintiff, having given notice to Ashford and to Kelly to produce the original deed, and both of them having failed to do so, was permitted, against the defendant's objection, to put in evidence a copy of the deed and acknowledgment, certified by the recorder to be a true copy.

No consideration was actually paid for the conveyance. The value of the lots conveyed was, according to Thompson's testimony, $4000 each or $16,000 in all, or, according to Ashford's testimony, not less than $3400 each or $13,600 in all.

Thompson testified that he never had any negotiations with Ashford about the property; and that he was induced to make this deed by the assurance of Kelly that the grantee would assume the incumbrances upon the land and relieve him, from liability upon the notes he had given secured by mortgage.

Ashford testified that he never had any negotiations with any one about the purchase of the land; and that in February, 1877, Kelly, who was his father-in-law, to whom he had lent much money and for whom he had endorsed several notes, told him that, in order to secure him from loss, he had procured a conveyance to be made to him of these four lots, in which he thought "there was considerable equity;" informed him at the same time that there were incumbrances or mortgages upon the property, but did not specifically mention any of them, except the $1500 mortgage upon lot 5; told him that the interest on this was pressing, and that, if he would pay it, Kelly would relieve him from any further trouble as to the incumbrances; and advised him to go on and collect the rents of the property, so as to indemnify himself against that interest and pay the taxes in arrears.

It was proved that Ashford in March, 1877, entered into possession of the four lots, and paid the taxes previously assessed upon them, and also paid interest accruing under the mortgage for $1500 on lot 5, and collected the rents of the four lots, until December 4, 1877, when he sold and conveyed lots 7 and 8 to one Duncan, subject to existing incumbrances thereon; and continued to collect the rents of the other two

lots, and to pay the interest accruing under the mortgage for $1500 on lot 5, until March 14, 1878, when this lot was sold, pursuant to the provisions of that mortgage, by public auction and conveyed to Harkness for the sum of $1700, which was insufficient to satisfy the amount then due on that mortgage.

On comparing Ashford's testimony with that of Boarman, the plaintiff's attorney, and with a letter written by Ashford to Boarman on October 3, 1877, it clearly appears that Ashford was informed of the clause in the deed to him, assuming payment of incumbrances, and was requested to pay the plaintiff's mortgage, as early as September, 1877, and then, as well as constantly afterwards, declined to pay it, or to recognize any personal liability to do so. There was no direct evidence that he knew of this clause before September, 1877.

The plaintiff brought an action at law upon the note against Thompson as maker and Kelly as endorser on November 13, 1877, and recovered judgment against both in December, 1877, on which execution issued and was returned unsatisfied, April 15, 1878.

The present bill was filed May 13, 1878. A decree dismissing the bill was rendered in special term, May 9, 1882, which, after the death of Ashford and the substitution of his executrix in his stead, was affirmed in general term, February 16, 1885, upon the grounds that Ashford had never accepted the deed to him, and also that the plaintiff's remedy, if any, was at law. 3 Mackey, 455. On the same day, as the record states, "from this decree the plaintiff appeals in open court to the Supreme Court of the United States, which appeal is allowed." The appeal bond was approved February 18, and the appeal was entered in this court April 10, 1885.

The case was argued upon a motion to dismiss the appeal for want of sufficient amount in controversy to give this court jurisdiction, as well as upon the merits.

*Mr. Walter D. Davidge*, (with whom was *Mr. William W. Boarman* on the brief,) for appellant, cited to the point that, under the circumstances, Ashford had become personally liable

to the holder of the note: *Trotter* v. *Hughes*, 12 N. Y. (2 Kernan) 74; *S. C.* 72 Am. Dec. 137; *Spaulding* v. *Hallenbeck*, 35 N. Y. 204; *Belmont* v. *Coman*, 22 N. Y. 438; *S. C.* 78 Am. Dec. 213; *Locke* v. *Homer*, 131 Mass. 93; *Pike* v. *Brown*, 7 Cush. 133; *Crawford* v. *Edwards*, 33 Michigan, 354; *Urquhart* v. *Brayton*, 12 R. I. 169; *Huyler* v. *Atwood*, 26 N. J. Eq. (11 C. E. Green) 504; *Bishop* v. *Douglass*, 25 Wisconsin, 696; *Ricard* v. *Sanderson*, 41 N. Y. 179; *Halsey* v. *Reed*, 9 Paige, 446; *King* v. *Whitely*, 10 Paige, 465, and cases therein cited; *Curtis* v. *Tyler*, 9 Paige, 432; *Garnsey* v. *Rogers*, 47 N. Y. 233; *Pardee* v. *Treat*, 82 N. Y. 385; *Lawrence* v. *Fox*, 20 N. Y. 268; *Burr* v. *Beers*, 24 N. Y. 178; *S. C.* 80 Am. Dec. 327; *Thorp* v. *Keokuk Coal Co.*, 48 N. Y. 253; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; *Vrooman* v. *Turner*, 69 N. Y. 280; *Hoff's Appeal*, 21 Penn. St. 200; *Moore's Appeal*, 88 Penn. St. 450; *Merriman* v. *Moore*, 90 Penn. St. 78; *Townsend* v. *Long*, 77 Penn. St. 143; *Justice* v. *Tallman*, 86 Penn. St. 147; *Miller* v. *Thompson*, 34 Michigan, 10; *Strohauer* v. *Voltz*, 42 Michigan, 444; *Booth* v. *Conn. Mut. Life Ins. Co.*, 43 Michigan, 299; *Crowell* v. *Currier*, 27 N. J. Eq. (12 C. E. Green) 152; *Klapworth* v. *Dressler*, 2 Beasley (N. J.) 62; *S. C.* 78 Am. Dec. 69; *Norwood* v. *DeHart*, 30 N. J. Eq. (3 Stewart) 412; *Crowell* v. *Hospital of St. Barnabas*, 27 N. J. Eq. (12 C. E. Green) 650; *Thompson* v. *Bertram*, 14 Iowa, 476; *Corbett* v. *Watermann*, 11 Iowa, 86; *Lamb* v. *Tucker*, 42 Iowa, 118; *Bowen* v. *Kurtz*, 37 Iowa, 239; *Schmucker* v. *Sibert*, 18 Kansas, 104; *Rogers* v. *Herron*, 92 Illinois, 583; *Gautzert* v. *Hoge*, 73 Illinois, 30; *Coffin* v. *Adams*, 131 Mass. 133; *Miller* v. *Billingsly*, 41 Indiana, 489; *Fitzgerald* v. *Barker*, 70 Missouri, 685; *S. C.* 26 Am. Rep. 660, note, where some of the above cited cases are discussed; *George* v. *Andrews*, 60 Maryland, 26.

*Mr. George F. Appleby* and *Mr. Calderon Carlisle* for appellee.

I. The copy from the record would be proof if deed was delivered of a conveyance of the lots in question by Archie Thompson to Ashford, — proof of the covenants of Thompson,

— but it is proof of nothing else. The assumption clause is urged as either a personal contract or evidence of a personal contract. There is no law requiring such a contract to be recorded, and hence a copy from the record is not evidence; the original has not been produced or proved to have been lost, and if this is offered as proof of such a contract for personal liability, it has been objected to and is not competent evidence. *Judson* v. *Dada*, 79 N. Y. 373, 378.

II. But this deed only speaks for the grantor; it purports to be an indenture but is only a deed-poll, and of itself it cannot bind Ashford; indeed, if the contract is this clause in the deed, and not something growing out of transactions between the parties amounting to a contract of which the recital is a mere *mention*, we have an unsigned promise imputed to Ashford to answer for the debts of Archie Thompson. The cases, which seeming similar, hold such a promise by a vendee to a vendor to be without the statute, are all cases where there is a clearly proved transaction between parties in which the vendee for an equivalent makes a vendor's debt his own before he makes any promise as to it. Browne on Stat. of Frauds, 214–214 *e*.

III. But suppose the deed in all its parts to be perfectly proved before the court, the warranty clause destroys all the force of the assumption as to complainant, whose lien is not enumerated nor excepted, and is a claim under the grantor; "certain," "not all," "incumbrances," cover taxes, which were claims not under the grantor, and there was both a tax sale and an unpaid tax resting on the property. Even a mortgage excepted from covenant against incumbrances, is not excepted from warranty. *Estabrook* v. *Smith*, 6 Gray, 572; *S. C.* 61 Am. Dec. 445; *Harlow* v. *Thomas*, 15 Pick. 66; *Maher* v. *Lanfrom*, 86 Illinois, 513, 523. Taxes are incumbrances. *Long* v. *Moler*, 5 Ohio St. 271; *Mitchell* v. *Pillsbury*, 5 Wisconsin, 407.

IV. The complainant is forced, even if the foregoing points be not well taken, to prove actual notice of and assent to this assumption clause by Ashford, and this cannot be inferred or presumed. There is no proof that the deed was ever delivered to or seen by Ashford.

The recording of it did not amount to a delivery nor did it charge Ashford with notice of the assumption clause. *Bull* v. *Titsworth*, 29 N. J. Eq. (2 Stewart) 73; *Cordts* v. *Hargrave*, 29 N. J. Eq. (2 Stewart) 446; *Mead* v. *Brun*, 32 N. Y. 277.

While assent may be presumed to that which is beneficial, it is never presumed to that which is detrimental. *Higman* v. *Stewart*, 38 Mich. 513. There must be an intelligent assent to fasten a liability such as this upon a man; here is none.

The payment of interest is not inconsistent with Ashford's not having assumed the incumbrances. *Elliott* v. *Sackett*, 108 U. S. 132; *Drury* v. *Hayden*, 111 U. S. 223.

The subsequent conveyance to Duncan at Kelly's request, under the circumstances, does not fix this liability.

The collection of rents was in pursuance of an understanding with Kelly and at his request to indemnify Ashford for interest paid out by him, Ashford. *Girard Trust Co.* v. *Stewart*, 86 Penn. St. 89.

There is no act of Ashford inconsistent with his ignorance of the assumption clause up to the early spring of 1878, when Mr. Boarman read it to him. On discovery that a second trust was really existent, he repudiated the whole matter and refused to hold the property and go on paying interest on Harkness' note.

V. The transaction between Kelly and Ashford was really a mortgage though absolute on its face. *Arnaud* v. *Grigg*, 29 N. J. 485. Refers to *Garnsey* v. *Rodgers*, 47 N. Y. 233.

In *Elliott* v. *Sackett*, the deed was reformed on the ground of mutual mistake.

In *Kilmer* v. *Smith*, 77 N. Y. 226, the deed was reformed on account of ignorance of one party and fraud of another.

In *Drury* v. *Hayden*, suit was by mortgagee and the court denied relief, and reasoned that deed might have been reformed. See, also, *Albany Savings Inst.* v. *Burdick*, 87 N. Y. 40, 44; *Dey Ermand* v. *Chamberlin*, 88 N. Y. 658.

VI. This complainant shows no pretence of a right in a court of equity. There is nothing whatever in the record to charge the conscience of Ashford. He kept back no purchase-money and assumed no trust.

If he had known all about the Thompson note, and had promised to pay it, the complainant's remedy would have been at law. *Ins. Co.* v. *Bailey,* 13 Wall. 620, 621.

If Ashford had made a promise to a third person to pay the debt due Miss Keller on the authority of this court, she might have maintained assumpsit. *Hendrick* v. *Lindsay,* 93 U. S. 143; *Lawrence* v. *Fox,* 20 N. Y. 268; *Burr* v. *Beers,* 24 N. Y. 178; *S. C.* 80 Am. Dec. 327; *Elliott* v. *Sackett, supra,* *Shepherd* v. *May,* 115 U. S. 505, 510.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The motion to dismiss for want of jurisdiction must be denied. This appeal was claimed and allowed February 16, 1885. At that time, the act of February 25, 1879, c. 99, was in force, which provided that "the final judgment or decree of the Supreme Court of the District of Columbia, in any case where the matter in dispute, exclusive of costs, exceeds the value of twenty-five hundred dollars, may be reëxamined and reversed or affirmed in the Supreme Court of the United States upon writ of error or appeal." 20 Stat. 321. The case is not affected by the act of March 3, 1885, c. 355, § 1, further limiting the appellate jurisdiction of this court, because that act only provides that "no appeal or writ of error shall hereafter be allowed" from any such judgment or decree, unless the matter in dispute, exclusive of costs, exceeds the sum of five thousand dollars. 23 Stat. 443. The change of phraseology, referring to the time when the appeal or writ of error is allowed, instead of to the time when it is entertained by this court, was evidently intended to prevent cutting off appeals taken and allowed before the passage of the act, as had been held to be the effect of the language used in the act of 1879. *Railroad Co.* v. *Grant,* 98 U. S. 398. In a suit founded upon a contract, the sum in dispute at the time of the judgment or decree appealed from, including any interest then accrued, is the test of appellate jurisdiction. *Bank of United States* v. *Daniel,* 12 Pet. 32, 52; *The Patapsco,* 12 Wall. 451; *New York Elevated*

*Railroad* v. *Fifth National Bank*, 118 U. S. 608; *Zeckendorf* v. *Johnson*, 123 U. S. 617. By the express terms of the promissory note sued on in this case, it bore interest at the rate of eight per cent yearly from its date until paid. Computing interest accordingly, the sum in dispute was much more than $2500 at the time of the decree in general term, which was the decree from which this appeal was taken. In *Railroad Co.* v. *Trook*, 100 U. S. 112, cited for the appellee, as in *District of Columbia* v. *Gannon*, 130 U. S. 227, the judgment in special term was for damages in an action sounding in tort, which bore no interest, either by the general law, or by the judgment of affirmance in general term.

Nor can the objection of the defendant, that the original deed from Thompson to Ashford was not produced, or its execution proved, be sustained. The deed is admitted to have been duly recorded. There is no presumption that it was in the possession of the plaintiff, who was not a party to it; but it is to be presumed to have been in the possession, either of Ashford, the grantee named in the deed, or of Kelly, who procured the deed to be made, and to whom it was originally delivered. Both of them having failed to produce it upon notice to do so, the recorder's copy was competent and sufficient evidence of the contents of the deed, as between the parties to this suit. Rev. Stat. D. C. §§ 440, 467; *Dick* v. *Balch*, 8 Pet. 30.

But upon the merits of the case we are unable to concur with the views expressed by the court below, in its opinion reported in 3 Mackey, 455, either as to the effect of the testimony, or as to the rights of the parties. The material facts, as they appear to us upon full examination of the record, have been already stated. It remains to consider the law applicable to those facts.

The questions to be decided concern the extent, the obligation and the enforcement of the agreement created by the clause in the deed of conveyance from Thompson to Ashford of this and three other lots, "subject, however, to certain incumbrances now resting thereon, payment of which is assumed by said party of the second part."

The five mortgages made by the grantor, namely, the plaintiff's mortgage for $2000 and a prior mortgage for $1500 on lot 5, and a mortgage of $2000 on each of the three other lots, and some unpaid taxes which had been assessed against the grantor, were incumbrances, and were the only incumbrances existing upon the granted premises at the time of the execution of this conveyance. Rawle on Covenants (5th ed.) § 77. The clause in question, by the words "certain incumbrances now resting thereon," designates and comprehends all those mortgages and taxes, as clearly as if the words used had been "the incumbrances," or "all incumbrances," or had particularly described each mortgage and each tax. We give no weight to Thompson's testimony as to Kelly's previous conversation with him to the same effect, because that conversation is not shown to have been authorized by or communicated to Ashford, and cannot affect the legal construction of the deed as against him.

It was argued that, because the deed contains a covenant of special warranty against all persons claiming under the grantor, the words "certain incumbrances" cannot include the mortgages made by the grantor, but must be limited to the unpaid taxes which, it is said, would not come within the covenant of special warranty. But the answer to this argument is that any person claiming title by virtue of a lien created by taxes assessed against the grantor would claim under the grantor, equally with one claiming by a mortgage from him; and incumbrances expressly assumed by the grantee are necessarily excluded from the covenants of the grantor.

Ashford is not shown to have had any knowledge of the conveyance at the time of its execution; and a suggestion was made in argument, based upon some vague expressions in his testimony, that the conveyance was intended to be made to him, by way of mortgage only, to secure him against loss on his previous loans to and endorsements for Kelly. But his subsequent acts are quite inconsistent with the theory that the conveyance did not vest the legal estate in him absolutely.

Within a month or two after the conveyance, having been told that the four lots had been conveyed to him and were

subject to incumbrances, (although perhaps not then informed of the amount of the incumbrances,) he entered into possession of the lots, and thenceforth collected the rents; and within nine months after the conveyance he had notice of the clause assuming payment of incumbrances, and was requested to pay the plaintiff's mortgage, and declined to pay it or to recognize any personal liability for it; yet he afterwards sold and conveyed away two of the lots, and continued to keep possession and to collect rents of the other two.  Having thus accepted the benefit of the conveyance, he cannot repudiate the burden imposed upon him by the express agreement therein, and would clearly have been liable to his grantor for any breach of that agreement.  *Blyer* v. *Monholland*, 2 Sandf. Ch. 478; *Coolidge* v. *Smith*, 129 Mass. 554; *Locke* v. *Homer*, 131 Mass. 93; *Muhlig* v. *Fiske*, 131 Mass. 110.

The case therefore stands just as if Ashford had himself received a deed by which he in terms agreed to pay a mortgage made by the grantor.  In such a case, according to the general, not to say uniform, current of American authority, as shown by the cases collected in the briefs of counsel, the mortgagee is entitled in some form to enforce the agreement against the grantee; and much of the argument at the bar was devoted to the question whether his remedy should be at law or in equity.

Upon the question whether the mortgagee could sue at law there is no occasion to examine the conflicting decisions in the courts of the several States, because it is clearly settled in this court that he could not.

This case cannot be distinguished from that of *National Bank* v. *Grand Lodge*, 98 U. S. 123, and clearly falls within the general rule upon which the judgment in that case was founded.

It was there held that a contract by which the Grand Lodge, for a consideration moving from another corporation, agreed with it to assume the payment of its bonds, would not support an action against the Grand Lodge by a holder of such bonds; and Mr. Justice Strong, delivering judgment, after observing that the contract was made between and for the benefit of the

two corporations, that the holders of the bonds were not parties to it, and that there was no privity between them and the Grand Lodge, said: "We do not propose to enter at large upon a consideration of the inquiry how far privity of contract between a plaintiff and a defendant is necessary to the maintenance of an action of assumpsit. The subject has been much debated, and the decisions are not all reconcilable. No doubt, the general rule is, that such a privity must exist. But there are confessedly many exceptions to it. One of them, and by far the most frequent one, is the case where, under a contract between two persons, assets have come to the promisor's hands or under his control, which in equity belong to a third person. In such a case it is held that the third person may sue in his own name. But then the suit is founded rather on the implied undertaking the law raised from the possession of the assets, than on the express promise. Another exception is where the plaintiff is the beneficiary solely interested in the promise, as where one person contracts with another to pay money or deliver some valuable thing to a third. But where a debt already exists from one person to another, a promise by a third person to pay such debt being primarily for the benefit of the original debtor, and to relieve him from liability to pay it, (there being no novation,) he has a right of action against the promisor for his own indemnity; and if the original creditor can also sue, the promisor would be liable to two separate actions, and therefore the rule is that the original creditor cannot sue. His case is not an exception from the general rule that privity of contract is required." 98 U. S. 124. See also *Cragin* v. *Lovell*, 109 U. S. 194.

In the earlier case of *Hendrick* v. *Lindsay*, 93 U. S. 143, cited by the defendant, a request, accompanied by a promise of indemnity, to one person, to sign an appeal bond, was construed to include another person who signed it as surety, and therefore to support a joint action by the principal and the surety, both of whom had signed the bond relying upon the promise, so that the only consideration for the promise moved from them.

In the case at bar, the promise of Ashford was to Thompson

and not to the mortgagees, and there was no privity of con-
tract between them and Ashford. The consideration of the
promise moved from Thompson alone. The only object of
the promise was to benefit him, and not to benefit the mort-
gagees or other incumbrancers; and they did not know of or
assent to the promise at the time it was made, nor afterwards
do or omit any act on the faith of it. It is clear, therefore,
that Thompson only could maintain an action at law upon that
promise.

In equity, as at law, the contract of the purchaser to pay
the mortgage, being made with the mortgagor and for his
benefit only, creates no direct obligation of the purchaser to
the mortgagee. *Parsons* v. *Freeman*, 2 P. Wms. 664, note;
*S. C.* Ambler, 115; *Oxford* v. *Rodney*, 14 Ves. 417, 424; *In re
Empress Engineering Co.*, 16 Ch. D. 125; *Gandy* v. *Gandy*, 30
Ch. D. 57, 67.

But it has been held by many state courts of high authority,
in accordance with the suggestion of Lord Hardwicke in *Par-
sons* v. *Freeman*, Ambler, 116, that in a court of equity the
mortgagee may avail himself of the right of the mortgagor
against the purchaser.

This result has been attained by a development and appli-
cation of the ancient and familiar doctrine in equity that a
creditor shall have the benefit of any obligation or security
given by the principal to the surety for the payment of the
debt. *Maure* v. *Harrison*, 1 Eq. Cas. Ab. 93, pl. 5; Bac. Ab.
Surety, D. 4; *Wright* v. *Morley*, 11 Ves. 12, 22; *Phillips* v.
*Thompson*, 2 Johns. Ch. 418; *Curtis* v. *Tyler*, 9 Paige, 432,
435; *New Bedford Institution for Savings* v. *Fairhaven
Bank*, 9 Allen, 175; *Hampton* v. *Phipps*, 108 U. S. 260, 263.

In *Hampton* v. *Phipps*, just cited, this court declared the
doctrine to be well settled, and applicable "equally between
sureties, so that securities placed by the principal in the hands
of one, to operate as an indemnity by payment of the debt,
shall enure to the benefit of all;" and declined to apply the
doctrine to the case before it, because the mortgage in question
was given by one surety to another merely to indemnify him
against being compelled to pay a greater share of the debt

than the sureties had agreed between themselves that he should bear, and he had not been compelled to pay a greater share.

The doctrine of the right of a creditor to the benefit of all securities given by the principal to the surety for the payment of the debt does not rest upon any liability of the principal to the creditor, or upon any peculiar relation of the surety towards the creditor; but upon the ground that the surety, being the creditor's debtor, and in fact occupying the relation of surety to another person, has received from that person an obligation or security for the payment of the debt, which a court of equity will therefore compel to be applied to that purpose at the suit of the creditor. Where the person ultimately held liable is himself a debtor to the creditor, the relief awarded has no reference to that fact, but is grounded wholly on the right of the creditor to avail himself of the right of the surety against the principal. If the person, who is admitted to be the creditor's debtor stands at the time of receiving the security, in the relation of surety to the person from whom he receives it, it is quite immaterial whether that person is or ever has been a debtor of the principal creditor, or whether the relation of suretyship or the indemnity to the surety existed, or was known to the creditor, when the debt was contracted. In short, if one person agrees with another to be primarily liable for a debt due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled, in equity, to be substituted in his place for the purpose of compelling such principal to pay the debt.

It is in accordance with the doctrine, thus understood, that the Court of Chancery of New York, the Court of Chancery and the Court of Errors of New Jersey, and the Supreme Court of Michigan have held a mortgagee to be entitled to avail himself of an agreement in a deed of conveyance from the mortgagor by which the grantee promises to pay the mortgage. *Halsey* v. *Reed*, 9 Paige, 446, 452; *King* v. *Whitely*, 10 Paige, 465; *Blyer* v. *Monholland*, 2 Sandf. Ch. 478; *Klapworth* v. *Dressler*, 2 Beasley, 62; *Hoy* v. *Bramhall*, 4 C. E.

Green, 74, 563; *Crowell* v. *Currier*, 12 C. E. Green, 152; *S. C.* on appeal, *nom. Crowell* v. *St. Barnabas Hospital*, 12 C. E. Green, 650; *Arnaud* v. *Grigg*, 2 Stew. Eq. 482; *Youngs* v. *Trustees of Public Schools*, 4 Stew. Eq. 290; *Crawford* v. *Edwards*, 33 Michigan, 354, 360.; *Miller* v. *Thompson*, 34 Michigan, 10; *Higman* v. *Stewart*, 38 Michigan, 513, 523; *Hicks* v. *McGarry*, 38 Michigan, 667; *Booth* v. *Connecticut Ins. Co.*, 43 Michigan, 299. See also *Pardee* v. *Treat*, 82 N. Y. 385, 387; *Coffin* v. *Adams*, 131 Mass. 133, 137; *Biddel* v. *Brizzolara*, 64 California, 354; *George* v. *Andrews*, 60 Maryland, 26; *Osborne* v. *Cabell*, 77 Virginia, 462.

The grounds and limits of the doctrine, as applied to such a case, have been well stated by Mr. Justice Depue, delivering the unanimous judgment of the Court of Errors of New Jersey, in *Crowell* v. *St. Barnabas Hospital*, as follows:

"The right of a mortgagee to enforce payment of the mortgage debt, either in whole or in part, against the grantee of the mortgagor, does not rest upon any contract of the grantee with him, or with the mortgagor for his benefit."

"The purchaser of lands subject to mortgage, who assumes and agrees to pay the mortgage debt, becomes, as between himself and his vendor, the principal debtor, and the liability of the vendor, as between the parties, is that of surety. If the vendor pays the mortgage debt, he may sue the vendee at law for the moneys so paid.

"In equity, a creditor may have the benefit of all collateral obligations for the payment of the debt, which a person standing in the situation of a surety for others holds for his indemnity. It is in the application of this principle that decrees for deficiency in foreclosure suits have been made against subsequent purchasers, who have assumed the payment of the mortgage debt, and thereby become principal debtors as between themselves and their grantors."

"But the right of the mortgagee to this remedy does not result from any fixed or vested right in him, arising either from the acceptance by the subsequent purchaser of the conveyance of the mortgaged premises, or from the obligation of the grantee to pay the mortgage debt as between himself and

his grantor. Though the assumption of the mortgage debt by the subsequent purchaser is absolute and unqualified in the deed of conveyance, it will be controlled by a collateral contract made between him and his grantor, which is not embodied in the deed. And it will not in any case be available to the mortgagee, unless the grantor was himself personally liable for the payment of the mortgage debt.

"Recovery of the deficiency after sale of the mortgaged premises, against a subsequent purchaser, is adjudged in a court of equity to a mortgagee not in virtue of any original equity residing in him. He is allowed, by a mere rule of procedure, to go directly as a creditor against the person ultimately liable, in order to avoid circuity of action, and save the mortgagor, as the intermediate party, from being harassed for the payment of the debt, and then driven to seek relief over against the person who has indemnified him, and upon whom the liability will ultimately fall. The equity on which his relief depends is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself in the place of the mortgagor." 12 C. E. Green, 655, 656.

The decisions of this court, cited for the defendant, are not only quite consistent with this conclusion, but strongly tend to define the true position of a mortgagee, who has in no way acted on the faith of, or otherwise made himself a party to, the agreement of the mortgagor's grantee to pay the mortgage; holding, on the one hand, that such a mortgagee has no greater right than the mortgagor has against the grantee, and therefore cannot object to the striking out by a court of equity, or to the release by the mortgagor, of such an agreement when inserted in the deed by mistake; *Elliott* v. *Sackett,* 108 U. S. 132; *Drury* v. *Hayden,* 111 U. S. 223; and, on the other hand, that such an agreement does not, without the mortgagee's assent, put the grantee and the mortgagor in the relation of principal and surety towards the mortgagee, so that the latter, by giving time to the grantee, will discharge the mortgagor. *Shepherd* v. *May,* 115 U. S. 505, 511.

The present case is a strong one for the application of the general doctrine. The land has been sold under a prior mort-

gage for a sum insufficient to pay that mortgage, leaving nothing to be applied towards the payment of the mortgage held by the plaintiff; and the plaintiff has exhausted her remedy against the mortgagor personally, by recovering judgment against him, execution upon which has been returned unsatisfied.

Although the mortgagor might properly have been made a party to this bill, yet as no objection was taken on that ground at the hearing, and the omission to make him a party cannot prejudice any interest of his, or any right of either party to this suit, it affords no ground for refusing relief. *Mechanics' Bank.* v. *Seton*, 1 Pet. 299; *Whiting* v. *Bank of United States*, 13 Pet. 6; *Miller* v. *Thompson*, 34 Michigan, 10.

*Decree reversed, and case remanded with directions to enter a decree for the plaintiff.*