**UNITED STATES FIDELITY & GUARANTY CO. v. CITY OF ASHEVILLE, N. C.**

No. 3995.

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1936.

Edwin S. Hartshorn, of Asheville, N. C., and L. R. Varser, of Lumberton, N. C. (Francis J. Heazel, George A. Shuford and Heazel, Shuford & Hartshorn, all of Asheville, N. C., on the brief), for appellant.

A. Hall Johnston, of Asheville, N. C. (Philip C. Cocke, Jr., and Johnston & Horner, all of Asheville, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is a suit instituted by the United States Fidelity & Guaranty Company to enforce by way of subrogation a promise of the city of Asheville, N. C., to pay a note of $50,000 executed by Dr. William Ray Griffin, which the city agreed to pay in the settlement of an award of damages made to Dr. Griffin in a condemnation proceeding. This note was secured by deed of trust on land belonging to Dr. Griffin which was condemned by the city. Dr. Griffin conveyed to the city the property condemned; and the city, in settlement of the condemnation award, agreed to pay the indebtedness secured by the deed of trust. The payment of the note had been guaranteed by the complainant; and, when that company was required to make payment under its guaranty, it instituted this suit to enforce the liability of the city under the condemnation proceeding and under its agreement to pay the note. The judge below, being of opinion that the city was not bound by the promise made in its behalf to pay for the property conveyed to it by Dr. Griffin, but that complainant was entitled to the property conveyed, rendered a decree accordingly, and complainant has appealed therefrom. The facts, so far as necessary to an understanding of the points involved, are as follows:

On November 12, 1926, Dr. Griffin obtained a loan from the Continental Mortgage Company of Asheville, N. C., and, to secure the payment thereof, executed and delivered to that company his five several negotiable promissory notes, payable to bearer, in the sum of $60,000, maturing one, two, three, four, and five years from date respectively. The one first maturing was for the sum of $1,000; the next three were for the sum of $3,000 each; and the one which matured five years from date was for $50,000. They were secured by deed of trust on a lot in the city of Asheville and the brick buildings situate thereon.

In April, 1927, the board of commissioners of the city of Asheville decided to widen Davidson street in such way as to require the taking of a large part of the property of Dr. Griffin to which we have referred, as well as portions of the property of several other persons. An attempt to reach an agreement with these property owners having failed, the city proceeded, in accordance with the provision of its charter, to condemn the property needed for this purpose. The jury appointed to assess benefits and damages in the condemnation proceeding filed a report, in which the damages of Dr. Griffin were assessed at $75,000, and various amounts by way of damage or benefit were assessed as to other persons; and on May 18, 1927, the mayor and commissioners by unanimous vote accepted and approved this report. Neither Dr. Griffin nor the city excepted to the amount awarded him for the taking of his property, and no steps were taken by either party to review the award in court. Certain of the other property owners did except to the award of the jury with respect to their property; but these controversies were eventually adjusted, and the property involved was duly acquired by the city.

Neither the trustee of the deed of trust on the Griffin property nor the holder of the notes secured thereby were made parties to the condemnation proceeding, and difficulty arose, for this reason, as to making settlement for the amount awarded as compensation for the portion of that property taken by condemnation. This controversy was settled by an agreement between Dr. Griffin and the mayor of the city, by the terms of which the city paid Dr. Griffin $12,500 in cash and assumed the payment of the $60,000 indebtedness secured by the deed of trust. Pursuant to this agreement Dr. Griffin conveyed the property to the city by a deed which, by a clause in the habendum, bound the city to pay the indebtedness. That deed set forth in the premises the reasons for its execution in the following recitals, viz.: "Whereas, the party of the second part, under and by virtue of the authority vested in it by its charter and the general laws of the state of North Carolina, has con-

demned the right of way through and over a portion of the premises hereinafter described for the extension of ·Davidson Street within said city of Asheville; and Whereas, the jury appointed for the purpose of assessing damages to said property in the condemnation proceedings hereinbefore mentioned, appraised and assessed the damages to said property at seventy-five thousand ($75,000.00) Dollars; and Whereas, the party of the second part does not desire to extend Davidson Street within the immediate future, and the parties have and do by these presents contract and agree to settle for the damages awarded to the parties of the first part."

Immediately upon the execution of this deed the city entered into possession of the property thereby conveyed to it and has been in possession thereof ever since, insuring it in the name of the city, collecting the rents therefrom, and securing its exemption from taxation on the ground that it is city property. The city not only paid to Dr. Griffin the $12,500 payable to him under the agreement, but also paid the first four of the notes secured by the deed of trust, amounting to $10,000, and regularly paid the interest on the remainder of the outstanding indebtedness thereby secured as it fell due. That the settlement made by the mayor with Dr. Griffin was approved, if not authorized, by the commissioners of the city, is abundantly established, not only by the things heretofore mentioned, which were done under the direction of the commissioners, but also by the fact that they knew that the Griffin notes were carried as obligations of the city upon its books and records; that, in the year 1929, they authorized an issue of bonds and borrowed money for the express purpose of providing for the damages due to the widening of Davidson street (the amount specified in the bond ordinance including the amount of the obligation assumed in connection with the Griffin property); that they made provision from time to time in the annual budget of the city for the payment of principal and interest of the Griffin notes; that they made appropriations of funds for this purpose; and that they paid the indebtedness of another property owner, which had been assumed in the same way with respect to the widening of the same street.

Not until after the $50,000 note had fallen due and demand had been made upon the city for its payment, was any question raised by any one as to the liability of the city with respect thereto. On April 7, 1932, however, after the city had been in possession of the property, collecting rents and profits for more than four years, and had been paying interest on the indebtedness assumed for a like period, and after it had paid for the other property embraced in the condemnation proceedings and had paid $12,500 to Griffin and $10,000 on the principal of his indebtedness which it had assumed, the city commissioners passed a resolution to the effect that Davidson street be not widened as contemplated, that the condemnation proceedings instituted for that purpose be discontinued and abandoned, that the assessments of damages and benefits made in the condemnation proceedings be canceled and that notice be given the holder of the $50,000 Griffin note that the city would not recognize as valid the Griffin deed by the acceptance of which the payment of that note had been assumed.

As to the right of complainant to enforce the obligation of the city with respect to the note, it appears that the ·payment of the note was guaranteed by complainant shortly after it was executed and at the time that it was pledged by the Continental Mortgage Company with a trustee to secure a bond issue. Its payment was subsequently again guaranteed by complainant when it was pledged by the Federal Mortgage Company with a trustee as security for bonds issued by that company. Upon the insolvency of the Federal Mortgage Company, it was sold under decree of. court and was purchased by the United Mortgage Corporation, a subsidiary of complainant. Its payment was then for a third time guaranteed by complainant when it was pledged by the United Mortgage Corporation with trustees as security for bonds issued by that corporation pursuant to its indenture of trust dated September 1, 1931. On September 2, 1932, after it had been for several months in default, complainant paid to the trustees the amount due under it, and they thereupon delivered it to complainant, and it is now held by that corporation.

Both the Continental Mortgage Company and the Federal Mortgage Company were North Carolina Corporations, as were also the corporations with which they pledged the bonds as trustees. For this reason, although complainant is a corporation of the state of Maryland and defendant is a municipal corporation of the state of North Carolina, the position is taken

that there is no jurisdiction in the federal court arising out of diversity of citizenship, as it is said that the suit is one to recover upon a promissory note by an assignee or subsequent holder, in a case of which the court would have had no jurisdiction if the assignment had not been made, and that jurisdiction is denied in such case by section 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1).

Three questions are presented by the appeal for our determination, viz.: (1) Whether there is liability on the part of the city for the remainder of the compensation awarded Dr. Griffin in the condemnation proceeding, notwithstanding the attempt of the commissioners to abandon that proceeding and cancel the award of damages; (2) if so, whether complainant may proceed in equity for the enforcement of that liability; and (3) whether there is jurisdiction in the federal courts to entertain such suit in view of the assignment clause of section 24(1) of the Judicial Code, 28 U.S.C.A. § 41 (1). We think that all of these questions must be answered in the affirmative.

■■■ The rule is well settled that the liability of the condemnor in condemnation proceedings cannot be avoided by abandonment of the proceedings after the landowner's right to compensation has become vested. Garrison v. City of New York, 21 Wall. 196, 204, 22 L.Ed. 612; 10 R.C.L. 237; 20 C.J. 1070. There is some conflict in the authorities as to whether the right to compensation becomes thus vested when the award is confirmed, or only when the compensation awarded is paid or the land taken. See cases cited in note in Ann.Cas. 1913E, 1062 and L.R.A.1916C, 644. It is unnecessary to decide which is the correct rule to apply here, however, as under either rule we think that the right to compensation had become vested before attempt was made to abandon the proceedings. Not only had the report of the jury to assess damages been accepted and approved by the authorities of the city having the right to condemn under its charter prior to the attempted abandonment, but it is admitted also that the city had taken possession of the property and had made settlement with the owner for the damages awarded, by part payment in cash and by assumption of indebtedness as to the remainder.

The statement in the deed executed to the city on the occasion of the settlement does not indicate an abandonment of the condemnation proceedings, but the contrary. It is true that the deed contains the recital that the city does not desire to extend Davidson street in the immediate future, but this indicates a mere postponement of the opening of the street, not a complete abandonment of the project or of the proceedings under which property was being acquired for carrying it on. Instead of showing an abandonment of the proceedings, the deed recites the action taken under them and professes to be executed for the purpose of carrying out the settlement made as to the damages therein awarded.

■■■ The city seeks to avoid the settlement on the ground that it was beyond the powers of the city, or certainly beyond the powers of the mayor, to purchase property which was not immediately needed for public purposes, or any property, whether needed for public purposes or not, which by the terms of the purchase was to remain subject to a mortgage. The fault of this position lies in considering the contract evidenced by the deed as an isolated and independent transaction. It was not that at all, but a mere step in the acquirement of the property in condemnation proceedings, which had been duly and properly instituted and carried to conclusion, except that the trustee under the mortgage had not been made a party. In order that the rights of the city as well as of the mortgagee might be protected in this situation, it was necessary that, in the settlement of the award, provision be made with respect to the mortgage debt; and this was accomplished by the city's agreeing to pay the debt when due and by appropriating so much of the award as was necessary to that purpose. The agreement, therefore, provided merely for the payment of the mortgage debt in such way as to discharge the mortgage, and differs in no material respect, so far as the city is concerned, from the device, frequently resorted to, of paying money into court, except that the city was allowed the use of the money pending the maturity of the debt, a matter of which it certainly ought not be heard to complain. We are far from intimating that such a settlement of the liability of the city under the award of damages was not within the powers of the mayor under the city charter; but we think that, apart from this, there can be no question as to the binding effect of the settlement, in view of the conclusive evidence of its

adoption and ratification by the board of commissioners to which we have adverted.

The case of Abbott Realty Co. v. City of Charlotte, 198 N.C. 564, 152 S.E. 686, particularly relied upon by the city, has no application to such a case as this. There the court was dealing with a contract beyond the charter powers of the city. Here there can be no question as to the power of the city to condemn the property in question or to make settlement with the property owner for the damages awarded. The board of commissioners, who unquestionably had power in the premises, conducted the condemnation and accepted and acted upon the contract settling the damages.

The right on the part of the condemnor to abandon proceedings which he has commenced rests upon the idea that, until rights are vested in the property owner as the result of such proceedings, the latter suffers no injury by the abandonment. Where, however, the property owner has acquired rights as the result of contract express or implied on the part of the condemnor to pay for his property, the right of abandonment no longer exists, as its exercise would impair the obligation of the contract. Here there can be no question but that the city contracted to pay for the property or that payment was to be made in part by paying the mortgage debt with which the property was encumbered. The contention that that contract was not binding upon the city ignores the fact that it was made as a step in the condemnation proceedings authorized and approved by the commissioners, who admittedly had power to condemn property under the city charter, and also that it was accepted and acted upon by the commissioners in their subsequent dealing both with the property thereby acquired and the debt thereby assumed.

■ Coming to the second question, we think it clear that, since the city is liable, as we have seen, for the remainder of the compensation awarded Dr. Griffin, notwithstanding the attempted abandonment of the condemnation proceedings, complainant as holder of the note secured by mortgage or deed of trust on the property, is entitled to proceed in equity to enforce the award as to the balance remaining due thereunder and have same applied to the payment of the note, and this without regard to the express promise of the city to pay same. Chicago v. Tebbetts, 104 U.S. 120, 26 L.Ed. 655; Keystone Bridge Co. v.

Summers, 13 W.Va. 476; Engelhardt v. Brooklyn, 3 Misc. 30, 21 N.Y.S. 777; City of Vallejo v. Superior Court of Napa County et al., 199 Cal. 408, 249 P. 1084, 48 A.L.R. 610, 616; Mayor and Council of Hagerstown v. Groh, 101 Md. 560, 61 A. 467, 4 Ann.Cas. 943; Connell v. City of Kaukauna et al., 164 Wis. 471, 159 N.W. 927, 160 N.W. 1035, Ann.Cas.1918A, 247. And see notes in 58 A.L.R. 1534 and 4 Ann. Cas. 944. As said in the note last cited: "There is a general agreement of the authorities that the damages awarded for land taken under eminent domain proceedings constitute a fund standing in place of the land and which may be subjected by the mortgagee to pay the debt secured by the mortgage." And even in those jurisdictions where the mortgagee is not considered an owner and is not a necessary party to the condemnation proceeding, he may in a court of equity follow the award and have it applied to his mortgage debt. Chicago, K. & W. R. Co. v. Sheldon, 53 Kan. 169, 35 P. 1105; Bates v. Boston Elev. R. Co., 187 Mass. 328, 72 N.E. 1017.

■ But there is another reason why complainant may enforce in equity the liability of the city. It is well settled that where one, in consideration of the conveyance to him of mortgaged property, assumes the payment of the mortgage debt, he becomes in contemplation of equity the principal debtor and the grantor the surety, and that, to avoid circuity of action, the creditor may sue in equity to have the obligation thus assumed enforced for his benefit. Keller v. Ashford, 133 U.S. 610, 622–626, 10 S.Ct. 494, 33 L.Ed. 667; Johns v. Wilson, 180 U.S. 440, 21 S.Ct. 445, 45 L.Ed. 613; Cobb v. Interstate Mortgage Corporation (C.C.A.4th) 20 F.(2d) 786, 788, 789; Silver King Coalition Mines Co. v. Silver King Consol. Mining Co. (C.C.A. 8th) 204 F. 166, Ann.Cas.1918B, 571; Blackmore v. Parkes (C.C.A.6th) 81 F. 899; Goodyear Shoe Machinery Co. v. Dancel (C.C.A.2d) 119 F. 692; Dancel v. United Shoe Machinery Co. (C.C.) 120 F. 839; Dancel v. Goodyear Shoe Machinery Co. (C.C.) 137 F. 157; Id. (C.C.A.) 144 F. 679; Philadelphia Rubber Works Co. v. United States Rubber Reclaiming Works (D.C.) 276 F. 613, 615. The doctrine was succinctly stated by the late Judge Walter H. Sanborn in a passage in his opinion in Silver King Coalition Mines Co. v. Silver King Consol. Mining Co., supra, which was quoted with approval by this court in Cobb v. Interstate Mortgage Co., supra, as fol-

lows: "When a grantee contracts with his grantor to pay the latter's debt or obligation in payment, or in part payment, for the conveyance, the creditor or obligee may accept and appropriate that contract to himself and maintain a suit in equity to enforce it. In that event the grantee becomes the principal debtor and the grantor the surety, and the creditor's suit stands on the equitable doctrines that the creditor may have the benefit of any security or obligation given by the principal debtor to the surety, and that to avoid circuity of action—that is to say, an action by the creditor against the original debtor and a subsequent action by the latter against his grantee—the creditor may be, and is in equity, substituted for the promisee, the grantor."

■ As to the third question, we see nothing in the contention that jurisdiction is denied the federal courts by the assignment provision of section 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1). The action is not one to recover on the promissory note, but to enforce equities of subrogation. These equities are threefold: (1) The equity of a guarantor of payment who has performed his obligation to be subrogated to the remedies of the holder; (2) the equity of the holder of a note secured by mortgage to be subrogated to the right of the mortgagor with respect to compensation awarded for condemnation of the mortgaged property; and (3) the equity of the holder of a note secured by mortgage to be subrogated to the right of the mortgagor to enforce the promise of the purchaser of the property to pay the mortgage debt. A suit grounded on any one of these equities, all three of which are the basis of the suit at bar, stands upon an entirely different footing from a mere suit upon a note. As was said by Mr. Justice Depue, speaking for the Court of Errors of New Jersey in Crowell v. Hospital of St. Barnabas, 27 N.J.Eq. (12 C.E.Green) 650, in a passage quoted by the Supreme Court in Keller v. Ashford, supra: "The right of a mortgagee to enforce payment of the mortgage debt, either in whole or in part, against the grantee of the mortgagor, does not rest upon any contract of the grantee with him, or with the mortgagor for his benefit. * * * The purchaser of lands subject to mortgage, who assumes and agrees to pay the mortgage debt, becomes, as between himself and his vendor, the principal debtor, and the liability of the vendor, as between the parties, is that of a surety. * * *

If the vendor pays the mortgage debt, he may sue the vendee at law for the moneys so paid. * * * In equity, a creditor may have the benefit of all collateral obligations for the payment of the debt, which a person standing in the situation of a surety for others, holds for his indemnity. * * * The equity on which his relief depends is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself in the place of the mortgagor."

In New Orleans v. Gaines' Administrator, 138 U.S. 595, 11 S.Ct. 428, 431, 34 L.Ed. 1102, the question was directly raised whether jurisdiction was defeated under the assignment provision of the statute where suit was grounded on right of subrogation to a cause of action which would have come within the statute if it had been assigned. In sustaining the jurisdiction of the court and holding that the statutes had no application to such a case, the court, speaking through Mr. Justice Bradley, said: "The first assignment asserts that the circuit court had no jurisdiction over the cause and parties for compelling the city of New Orleans to pay to the appellees the decrees in the Monsseaux and Agnelly Cases, because the defendants in those decrees were citizens of the same state with the appellant, the city of New Orleans, and could not themselves sue the city in the federal court, and the appellees have no better right in that respect than their assignors. If the claim of Mrs. Gaines against the city depended upon an assignment by the defendants in the Monsseaux and Agnelly Cases of their rights against the city, arising from their eviction, the position of the appellant would be well founded; but, as explained in our former opinion, this is not the case. The right of Mrs. Gaines to pursue the city was an equitable right, arising and accruing to her on the basis of her own claims against the said defendants, and by subrogation to their equity to be protected and indemnified by the city. Although a derived equity on the part of Mrs. Gaines, so far as the city is concerned, yet it is not created by assignment, but by operation of law through the rules of equity."

It is clear from these authorities that, even if complainant be treated for purposes of jurisdiction as suing as an assignee of the note, the court would have jurisdiction, since it is not suing to enforce the note, but to enforce by way of subrogation the obligation of the city to pay the balance

of the compensation award and its promise to discharge this obligation by paying the debt secured by mortgage. But since complainant paid the amount due under the note, not as a mere volunteer, as has been contended, but in discharge of its obligation as guarantor, it is suing, as it has a right to do, not as assignee, but by way of subrogation; and the fact that the note has been transferred or assigned to it does not affect the jurisdiction. As said in Farmers' Bank v. Hayes (C.C.A.6th) 58 F.(2d) 34, 37: "The assignment is in aid of the surety's equitable right, it does not destroy it or take it away." The question in such case is whether complainant had a cause of action without resorting to the assignment. In holding that the federal court had jurisdiction of a cause based upon the equity of subrogation, notwithstanding that complainant had accepted conventional assignments of certain choses in action, the Circuit Court of Appeals of the Fifth Circuit, speaking through the late Judge Grubb, said in Claiborne Parish School Board v. Fidelity & Deposit Co. of Maryland (C.C.A.5th) 40 F.(2d) 577, 578: "A question as to the federal jurisdiction was presented. The plaintiff after paying off the judgments obtained by the laborers and material furnishers had taken conventional assignments of their claims, and this was alleged in its petition. If the basis of the suit was the conventional assignments taken by the plaintiff, the assignors, being citizens of Louisiana, and the defendants being citizens of the same state, under section 24 of the Judicial Code (28 U.S.C.A. § 41), federal jurisdiction would be lacking. The District Judge sustained the federal jurisdiction (11 F.(2d) 404) upon the ground that the right of action was not derived through the conventional assignments of the Louisiana citizens but was an independent, equitable right of the appellee's in the fund, which was charged to have been unlawfully diverted by appellant, through the building contract and the bond securing its performance. The question on the plea to the jurisdiction, as well as upon the merits, is whether the plaintiff had a cause of action against the defendants without the need to resort to the conventional assignments through a lien cre-

ated by the original transaction between the appellant, Casey, and the appellee, upon the fund that was paid the bank. * * * The appellee would have had a right of subrogation, without having taken assignments from such claimants to their rights in the retained fund, under articles 3052 and 3053 of the Louisiana Civil Code and under the general principles of equity." See, also, Staples v. Central Surety & Ins. Corp. (C.C.A.10th) 62 F.(2d) 650, 652; American Surety Co. of N.Y. v. Lewis State Bank (C.C.A.5th) 58 F.(2d) 559, 560; Fidelity & Deposit Co. of Maryland v. Farmers' Bank (C.C.A.8th) 44 F.(2d) 11, 15; Hughes Federal Practice, vol. 2, p. 148, sec. 894; 25 R.C.L. p. 1391, sec. 73.

As pointed out by Judge Cushman in Palmer v. Oregon-Washington R. & Nav. Co. (D.C.) 208 F. 666, 669, the right to sue on the theory of subrogation does not come within the spirit of the assignment statute. While subrogation may be called an equitable assignment, "there is not the opportunity in such case to fraudulently confer, or deprive the court of, jurisdiction as there is by means of a simulated legal assignment."

We entertain no doubt as to jurisdiction or as to the right of complainant to subrogation; and a careful examination of the record before us discloses no reason why the city of Asheville should not live up to the contract it made with Dr. Griffin. As has been said by Mr. Justice Romer: "There is a great principle which I think ought to be adhered to by this court and by every court where it can possibly do so; that is to say that a man shall abide by his contracts and that a man's contracts should be enforced as against him." Biggs v. Hoddinott, 2 Ch. 307, 313. And to this we may add that, in the application of this salutary principle, municipalities and other public bodies must be held to the same high standard of accountability.

The decree appealed from will be reversed, and the cause will be remanded, with direction to enter decree for complainant in accordance with the principles herein expressed.

Reversed.