## EPISCOPAL CITY MISSION *et al v.* BROWN *et al.*

*(Circuit Court, N. D. Illinois. July 31, 1890.)*

1. ASSUMPTION OF MORTGAGE—SUBSTITUTION OF THIRD PERSON.
    Plaintiff agreed to sell to defendant property subject to a mortgage which defendant was to assume. Afterwards defendant requested plaintiff to convey to defendant's wife, which he did on defendant's giving a bond guarantying payment of the mortgage by defendant's wife. The mortgage was foreclosed, and the deficiency exceeded the amount of the guaranty bond executed by defendant. On a bill to enforce payment of the deficiency, defendant testified that the bond was given because he had agreed to assume the mortgage, and that, if the property was conveyed to his wife, he (defendant) would not be carrying out his contract. Plaintiff testified that he took a bond because he was "deeding to a straw grantee," and that the amount of the bond was fixed "as a sort of balance between us in our liabilities." There was no evidence of any fraud or false statements by defendant to induce plaintiff to convey to defendant's wife, or of any statement that she would assume the mortgage, or that defendant was acting as agent for his wife. *Held,* that defendant's wife was substituted as grantee by consent, and that defendant could not be held liable for the entire deficiency.

2. SAME—BILL TO ENFORCE—SUFFICIENCY.
    The bond was conditioned to indemnify plaintiff against any loss by reason of a failure of his grantee (defendant's wife) to pay the mortgage on the property conveyed to her by plaintiff to an amount equal to the amount of the mortgage assumed by plaintiff. Plaintiff made default in the payment of the mortgage so assumed by him, and it was discharged by defendant. *Held,* that a bill by plaintiff and his mortgagee, to whom he had assigned the bond to enforce payment of a deficiency arising on foreclosure of the mortgage on the property conveyed to defendant's wife, would be dismissed, since there was no proof that plaintiff had paid anything on the mortgage, and defendant's liability on the bond was canceled by his payment of the mortgage assumed by plaintiff.

3. SAME—PAYMENT—STOCKS.
    The fact that plaintiff paid with stocks the mortgage which defendant had assumed will not prevent plaintiff from setting off against the bond the full amount of such mortgage, and defendant cannot, in such case, inquire into the actual value of such stocks.

In Equity.
*George Burry,* for complainants.
*Osborne & Lynde,* for defendants.

BLODGETT, J. The bill in this case seeks to enforce payment of deficiencies remaining unpaid on two mortgages of $19,500 each, given by George W. Meserve to the Episcopal City Mission of the city of Boston, on March 1, 1877, on certain lots in the city of Boston, the property covered by the mortgages having been conveyed by Meserve to the defendant Lucy T. Brown, wife of the defendant John B. Brown, with a clause in the deed of conveyance by which the grantee assumed and agreed to pay the mortgages in question, and said mortgages having been foreclosed, leaving the deficiencies now in controversy. The facts as they appear from the proofs, are that about the 6th day of January, 1877, Meserve, by a contract in writing, agreed to sell to defendant John B. Brown, lots 2 and 3, on Purchase street, in the city of Boston, subject to a mortgage on each lot to the complainant the Episcopal City Mission, for $19,500, which mortgage Brown was to assume and pay, and Brown was to pay Meserve, in part, by conveying to him certain lots and lands in and about the city of Chicago, upon which there were

incumbrances to the amount of something over $10,000, which Meserve was to assume and pay. In the early part of March, 1877, the parties were ready to exchange deeds, when Brown requested Meserve to make the deed of the Boston property to his wife, the defendant Lucy T. Brown. Meserve hesitated about complying with this request, on the ground that he knew nothing of Mrs. Brown's pecuniary responsibility, and did not know that her agreement to pay the mortgages upon the Boston lots would be a sufficient guaranty to him that they would be paid. To obviate this objection, Brown proposed to give his individual bond to Meserve, by which he should guaranty the performance of Mrs. Brown's assumption of the mortgage indebtedness. This proposition was satisfactory to Meserve, and separate deeds were made to Mrs. Brown for each of the Boston lots, each of which contained an assumption clause, as follows:

"And this conveyance is now made subject to a mortgage on said store, for $19,500, made by me to said Episcopal City Mission, which mortgage, with all interest thereon, said Lucy T. Brown hereby assumes and agrees to pay, and to protect and save harmless the said grantor therefrom."

And in the deed of Brown to Meserve of the Chicago property a similar clause was inserted, by which Meserve assumed and agreed to pay, as his own debt, as a part of the purchase price, the incumbrances on said property, and save and keep Brown harmless therefrom. The bond given by Brown to Meserve was in the following language:

"Know all men by these presents, that I, John B. Brown, am holden and stand firmly bound unto George W. Meserve in the sum of $10,000, to the payment of which to the said Meserve and his executors, administrators, or assigns I hereby bind myself, my heirs, executors, and administrators. The condition of the above obligation is such that, whereas, the said George W. Meserve did by deed dated March 1, 1877, convey to Lucy T. Brown, two separate estates on Purchase street, Boston, Mass., each estate being subject to a mortgage of $19,500, at 6½ per cent. interest, to the Episcopal City Mission, of even date with said deed, which said mortgage, and interest thereon, said Lucy T. Brown assumes and agrees to pay and hold the said Meserve harmless therefrom. Now, therefore, if the said Lucy T. Brown shall perform the obligations of said deed as therein expressed, and save the said Meserve harmless, then this obligation shall be void; otherwise it shall remain in full force and virtue, only to the extent, however, that said Meserve suffers harm."

It is conceded that in the fall of 1877 default was made in the payment of the interest upon the Boston property, and that thereupon the Episcopal City Mission entered into possession thereof, and continued in such possession for several years, collecting and retaining the rents; and in the spring of 1884, they proceeded to foreclose the said mortgages, and sell the mortgaged property, the result of which foreclosure and sale was to leave a deficiency on lot 3 of $10,574.71, and on lot 4 of $10,-074.71, which are the deficiencies now sought to be recovered.

It is also conceded that Meserve made default in the payment of the indebtedness secured upon the Chicago property, and that Brown was compelled to pay and settle the same. The proof also shows without dispute that Mrs. Brown was not consulted in regard to having the deed

of the Boston property made to her, and that she never consented to the taking of said deed, nor to the assumption of the said mortgage indebtedness; that in fact, while she was informed, soon after the deeds were made, that they ran to her, instead of her husband, she was not informed that the deeds contained any assumption of the mortgages in question until about the time this suit was commenced, in December, 1886, and upon these facts the counsel for the Episcopal City Mission concedes that no case for a recovery is made against Mrs. Brown,—a view in which I fully concur.

The complainant the Episcopal City Mission, however, claims—*First*, to hold Brown liable for the full amount of this deficiency, because he fraudulently used the name of his wife as grantee in these two deeds without authority, and thereby made himself personally responsible for the amount of the indebtedness which he, without authority, caused Mrs. Brown to assume; *second*, that, if not liable for the full amount of· such deficiencies, he is liable to the full amount of the guaranty bond which Meserve has transferred to the complainant the Episcopal City Mission. The proof in the case clearly shows that while, in the inception of the transaction, it was agreed that the conveyance by Meserve of the Boston property was to be made to Brown, yet, when the deeds came to be exchanged between the parties, Brown requested that the deed be made to Mrs. Brown, and Meserve acceded to this request upon Brown's giving him the indemnity bond which I have quoted. The reason for giving this bond is given by Mr. Brown in his testimony, in substance, as follows:

"By the contract, I had agreed to assume the mortgages upon these stores to the amount of $19,500 each, and the objection · ·s made that, if the property was deeded to Mrs. Brown, I should not be carrying out my contract, and therefore he required the bond. I recognized the claim, and agreed to give my bond to meet that responsibility. We agreed upon five thousand dollars at first, but, later, Mr. Meserve raised the question that, as this bond was to stand in lieu of the obligation in the deed, it should be for $10,000. This was agreed to, and a bond for that amount was given. The deeds were delivered at the time I delivered the bond. I delivered Mr. Meserve my deed of the Chicago property and my bond for $10,000, and received from him the two deeds of the Purchase-St. stores at the same time."

And Meserve in his testimony says:

"The reasons or circumstances leading to the making of the bond were to hold me harmless against possible loss on those notes. The facts and circumstances which led to the fixing of the amount of the bond were to make Mr. Brown's liability equal to my own. I had assumed about $10,000 in Chicago. My feeling was that he had assumed $39,000 here, and there could not possibly be a loss to that extent, if any. I did not feel that there would be. I recollect it now as a sort of balance between us in our liabilities. I knew my mortgages to be well-secured mercantile property, that could not depreciate to any great extent; his were secured by vacant lots. I took a bond because I was deeding to a straw grantee,—somebody that I did not know. I did not mean to make the bond the whole amount of the difference, because I knew there could be no possible way of making my security worthless in three years."

This testimony, together with other quotations which might be made from the record, show, I think, conclusively that Meserve consented to the substitution of Mrs. Brown as grantee in his deed of the Boston property, without any regard to her responsibility upon the assumption clauses in the deeds, relying wholly upon the indemnity bond of Mr. Brown to secure him against loss as the mortgagor of the Boston property. I do not mean by this that Mrs. Brown would have been wholly released from liability on these assumption clauses if she had been a consenting party thereto, but that Meserve looked only to Brown's bond for his indemnity, and made no question either as to Mrs. Brown's solvency or as to whether she knew anything about the deed to her and its obligations, or not, and that taking the bond by Meserve shows that he was not imposed upon. There is no proof that there was any fraud or false statement made by Brown to Meserve to induce him to make the deeds to Mrs. Brown. No statement to the effect that Mrs. Brown had consented to take the title and assume the mortgage indebtedness, or that he, as her agent, had authority to bind her in any way in the assumption of the mortgage indebtedness. Meserve only insisted upon the $10,-000 individual bond of Brown to protect him against the mortgages he had given the Episcopal City Mission, and which, by the terms of the deeds, Mrs. Brown had assumed. Meserve was not imposed upon by any statement, express or implied, that Mrs. Brown was or was not a consenting party to the transaction; but Meserve, upon Brown's agreeing to give the bond, consented to the substitution of Mrs. Brown as the grantee, relying solely upon Brown's bond, knowing, as he says i 1 his testimony, that he was deeding the property to a "straw grantee." I see no reason why these parties had not an unquestionable right to make this substitution, and, if Meserve consented to it, it is binding on him and all claiming under him. This being, in my estimation, a clear case of substitution by consent, with no question on the part of Meserve of Brown's right to ask such substitution, I do not think that any such case of imposition upon Meserve is made out as entitles the complainant or Meserve to invoke the principle that, where an agent pretends to act for a principal without authority, even without fraud, he is himself liable as principal, as there is no proof that Brown pretended to have any authority to act for Mrs. Brown in the matter.

The proof shows, and it is conceded, that before the commencement of this suit Meserve had transferred the indemnity bond given him by Brown to the Episcopal City Mission, and fully consented that the mission might enforce whatever rights he (Meserve) had as against Brown. No question, therefore, arises in the case as to the right of the Episcopal City Mission to enforce by this suit whatever rights Meserve had under the bond as against Brown. Copious citations of authorities in regard to the right of a mortgagee to enforce an agreement on the part of the grantee of a mortgagor to pay the mortgage debt have been made; but I think all the questions that arise in this case are substantially settled in the late case of *Keller* v. *Ashford*, reported in 133 U. S. 610, 10 Sup. Ct. Rep. 494. It is there decided, in substance, that the mortgagee

may avail himself of any undertakings made with the mortgagor for the payment of the mortgage indebtedness, to the extent that the mortgagor might enforce such undertaking. Applying this rule to this case, then, the question is, what rights could Meserve have enforced against John B. Brown upon this bond? It is admitted that the transaction between Meserve and Brown was, in effect, an exchange of property, in which each party assumed to pay certain debts or obligations of the other. And it is also admitted that Meserve made default in his undertaking, and that Brown was compelled to pay and settle, and has paid and settled, the incumbrances upon the Chicago property which Meserve assumed to pay. It is equally clear that Brown would be entitled, in an action by Meserve against him upon this bond, to set off any payments which he had been compelled to make upon the incumbrances on this Chicago property which Meserve assumed and has failed to pay, and which Brown has since paid or remains liable therefor. The proof shows that Brown's payments in cash, or what was accepted as cash from him, upon the incumbrances on this Chicago property, amount, with interest, to $9,122.63. It is true that Brown testifies that, while some of this indebtedness which Meserve assumed still remains uncanceled, yet he has made such arrangements with the holders, by agreements for the payment of other indebtedness, that he expects these debts so assumed by Meserve will all be canceled, so that Meserve will be relieved from payment. This, in my opinion, fully cancels, by right of recoupment, all claims Meserve would have against Brown on the bond, and hence cancels all claims of the complainant therein.

It is urged that Brown paid some portion of this indebtedness with stocks and bonds, and that the complainant has the right to inquire into the value of those stocks and bonds. I do not think this position in any sense tenable. The defendant John B. Brown had the right to settle with his creditors in any way that he saw fit, and pay them either in property or money, so long as he retired and liquidated his indebtedness. I do not therefore see that Meserve would have any right of recovery against Brown upon this bond, as, by the express terms of the bond, he is only to be liable to the extent that Meserve sustains harm, and, so far as the proof shows, Meserve has sustained no harm, as he has not paid a penny on the mortgage indebtedness which Mrs. Brown assumed, and if he has no right, certainly the Episcopal City Mission, in whose behalf this suit is prosecuted, can have no such right. The bill is therefore dismissed for want of equity.