## EPISCOPAL CITY MISSION *v.* BROWN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 250. Submitted April 4, 1895. — Decided May 20, 1895.

M., after mortgaging lots in Boston to the Episcopal Mission, conveyed them to the wife of B. with a clause in the deed that she thereby assumed

and agreed to pay the mortgages, and B. gave M. his bond to ensure his wife's performance of her agreement. B. and wife about the same time conveyed to M. parcels of land in Chicago subject to mortgages, which M. assumed. The mortgages on the Boston lots not being paid, the mortgagee foreclosed them. They were sold for sums less than the amounts due on the mortgages. M. assigned to the mortgagee the bond of B., and a suit in equity was begun in the name of the assignee and of M. against B. and his wife; seeking a decree condemning the latter to pay the debt. The wife answered denying any knowledge of the transaction, which she averred took place without her knowledge or consent, and the answer of B. set up a nonperformance by M. of his agreement to assume and pay the mortgages on the Chicago property, whereby B. had been compelled to pay large sums of money. *Held,*

(1) That the mortgagee had only the rights of M. and was subject to all rights of set-off between M. and B.;

(2) That the proof left no doubt that the deed to the wife of B. was made without her knowledge and that she was not a party to it;

(3) That in whatever aspect it was viewed the assignee of M. could not recover.

On March 1, 1877, George W. Meserve mortgaged to the Episcopal City Mission, a Massachusetts corporation, certain lots in the city of Boston, which were designated as "lots 3 and 4." The mortgages were for the sum of $19,500 on each lot. On the same day Meserve conveyed these lots to Lucy T. Brown, the wife of John B. Brown. The consideration of the conveyance was $30,000, "to me paid by said Lucy T. Brown, wife of John B. Brown." After referring to the mortgages above mentioned, the deed contained these words: "Which mortgages, with all interest thereon, the said Lucy T. Brown hereby assumes and agrees to pay, and to protect and save harmless said grantor therefrom." On March 19, 1877, the following bond was executed by John B. Brown:

"Know all men by these presents, that I, John B. Brown, am holden and stand firmly bound unto George W. Meserve in the sum of ten thousand dollars, to the payment of which to the said Meserve or his executors, administrators, or assigns I hereby bind myself, my heirs, executors, and administrators.

"The condition of the obligation is such, that whereas the said George W. Meserve did, by deeds dated March 1, 1877, convey unto Lucy T. Brown two separate estates on Purchase Street, Boston, Mass., each estate being subject to a mortgage

of $19,500, at six and one-half per cent interest, to the Episcopal City Mission, of even date with said deeds, which said mortgage and interest thereon the said Lucy T. Brown assumed and agreed to pay and hold the said Meserve harmless therefrom:

"Now, therefore, if the said Lucy T. Brown shall perform the obligations of said deeds as therein expressed, and save the said Meserve harmless, then this obligation shall be void, otherwise it shall be and remain in full force and virtue, only to the extent, however, that the said Meserve suffers harm."

On the 14th day of March, 1877, John B. Brown and Lucy T. Brown deeded to Meserve certain parcels of land situated in the city of Chicago. It was stated that the deed was executed for "one dollar and for other good and valuable considerations," the receipt whereof was acknowledged by the sellers. The property conveyed was described as encumbered by various mortgages amounting in principal to $12,225.70, subject to a credit of $2680, leaving a balance in principal of $9545.70, which, with the interest due, made the amount of the assumption taken by Meserve exceed ten thousand dollars.

On March 1, 1884, the Boston property was sold to pay the mortgage debt, and was bought in by the Episcopal City Mission, which, after applying the price to the debt, stated that there was a deficiency on one lot of $10,074.71, and on the other of $10,574.71. In February, 1886, Meserve assigned to the Mission "all claims, demands, or rights of action, of whatever sort or kind in law or equity, which I may have against John B. Brown, formerly of Boston, and Lucy T. Brown, wife of the said John B. Brown." On March 18, 1887, Meserve specially assigned to the same corporation all his right, title, and interest in and to the bond given to him by John B. Brown as above mentioned.

In July, 1890, the Episcopal City Mission and George W. Meserve brought their bill against Lucy T. Brown and John B. Brown in the Circuit Court of the United States for the Northern District of Illinois. They set out the mortgages given by Meserve to the Episcopal City Mission; the sale of the mortgaged property by Meserve to Mrs. Brown; the

assumption by her of the mortgage debt; the bond given to Meserve by Brown; the foreclosure proceedings; and the amount of the indebtedness remaining after crediting the price as above stated. The bill averred that repeated demands had been made upon Brown and his wife to pay the balance of the mortgage debt; that they had refused to do so, and that the Browns pretended that Meserve was indebted to John B. Brown for a larger amount than that which he owed Meserve; that this fact entitled him to a set-off; and that, in fact, he owed Meserve nothing. The bill further charged the financial irresponsibility of Meserve, and his inability to pay the remainder of the debt. Complainants prayed that the corporation might be subrogated to the rights of Meserve against Brown and his wife, and that a decree might be passed condemning the latter to pay the debt. Mrs. Brown answered by denying any liability. She averred that she had been no party to the purchase of Meserve's Boston property, and had done nothing whatever in the way of acceptance or ratification in connection with the transaction; that some time after the purchase she was informed by her husband that her name had been used in Meserve's deed, for his benefit, and that she never at any time knew the contents of the deeds or the assumptions therein purported to have been taken by her. She averred her belief that the deeds were made in her name in consequence of an agreement between her husband and Meserve, by which her husband undertook to convey to Meserve certain property in Chicago, and Meserve was to assume the incumbrances thereon to the discharge of her husband, while Meserve was to deed to him the property in Boston, and he was to assume all incumbrances resting upon it. She also averred that Meserve had failed to carry out his obligations by discharging the debt assumed by him, and that, in consequence of this, her husband had been compelled to pay the same, and had a claim against Meserve exceeding the amount of any demand which the latter might have upon him. She prayed that if she should be held liable for the Boston transaction, she be allowed, by way of set-off,

credit for the amount of the obligations under which Meserve rested in connection with the Chicago property. The answer of Brown also averred that the deed had been taken in the name of Mrs. Brown without her knowledge or consent, and without her being in any way a party to the contracts; that the sale of the Boston property was the result of an agreement between himself and Meserve, by which they bound themselves to exchange property in Chicago belonging to Brown for the property in Boston belonging to Meserve; that by the agreement between them the deed for the Boston property was made in the name of Mrs. Brown for Brown's convenience, and that it was done with the full assent of Meserve, it being understood between them that Brown's liability resulting from the sale of the Boston property should be $10,000 evidenced by the bond which was the equivalent of the obligation, to be assumed by Meserve in favor of Brown in consequence of the transfer to be made to Meserve, of the Chicago property, the agreement being that each party should mutually assume the risk beyond these obligations. The answer further set out that in pursuance of their agreement Brown's bond was given for $10,000 to Meserve, and the sale of the Chicago property was made to Meserve, who assumed the incumbrances upon it; that Meserve had failed to carry out his assumption of the Chicago incumbrances, and that Brown had been compelled to expend in consequence more than twenty thousand dollars, and asserted that Brown, therefore, was released from all claim on the bond.

After taking much testimony the complainants filed an amended bill, which again stated the agreement between Meserve and Brown, recited the sales of the Chicago and Boston property; the giving of the bond by Brown; the default in the payment of the mortgage on the Boston property, and the sale thereof, and the deficiency in the amount realized. It also averred the defences set up by Mrs. Brown, and her denial of responsibility under the assumptions in the Boston sales. It averred that Brown's conduct in making his wife a party to the deed was fraudulent, and denied his right to set

off any indebtedness to him on the part of Meserve against the Episcopal City Mission. It prayed for a decree subrogating the Mission to the rights of Meserve against Brown and wife. To this amended bill Mrs. Brown answered by practically reiterating her former defences. Brown answered also, setting up substantially the same defence which he had advanced before, and further specially denying that any fraud had been practised on Meserve in substituting the name of his wife for his own, and averring that, on the contrary, her name had been used as " a straw grantee " with the full knowledge of Meserve, and that his bond of $10,000 had been given by him to evidence the extent of his obligation, and that this was a part of the contract between the parties.

The decree below rejected the claim of the complainants. *Episcopal City Mission* v. *Brown*, 43 Fed. Rep. 834.

*Mr. George Burry* for appellants.

*Mr. Charles M. Osborn* and *Mr. Samuel A. Lynde* for appellees.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

Whatever be the obligations created by the assumptions contained in the deeds to Mrs. Brown, and the bond which was furnished by Brown, it is clear that the Mission has only the rights of Meserve, and therefore can assert only such cause of action, legal or equitable, as Meserve may possess. *Kelley* v. *Ashford*, 133 U. S. 610; *Willard* v. *Wood*, 135 U. S. 309. The corporation being thus limited to the rights which it takes from Meserve, is clearly subject to all set-offs existing between Meserve and Brown. The proof leaves no doubt that the deed to Mrs. Brown was made without her consent, and that she was in no way a party thereto, either originally or by ratification. Indeed, the court below, in its opinion, states that it was conceded, in that forum, that there was no case against Mrs. Brown, and we do not understand that it is seriously contended here that the record shows any foundation for recovery against her. The only point really at issue is

whether Brown is liable for the whole amount of the mort-
gages resting upon the Boston property, or whether his liabil-
ity is limited to the amount in his bond. The proof shows
that prior to the making of the deeds of the Boston property
to Mrs. Brown there was an understanding between Brown
and Meserve that the deeds should be made to the former,
and that the insertion of the name of Mrs. Brown was subse-
quently agreed on between the parties.

It is urged that, inasmuch as Brown had no authority to use
his wife's name, he is liable for the whole debt, either as a
trustee, or in consequence of his having acted as agent for his
wife without authority. These contentions are not supported
by the record. The proof shows that the substitution of Mrs.
Brown for her husband, as the purchaser, was made with the
full consent and knowledge of Meserve, and that this arrange-
ment was carried out by both parties with full knowledge
of all its consequences. By these understandings Meserve
on the one hand was to buy from Brown property situated
in Chicago and assume the incumbrances thereon — these
amounting to about $10,000; and Brown on the other hand
was to purchase the Boston property from Meserve and to
assume a personal responsibility for a sum equal to the amount
which Meserve had assumed in regard to the Chicago property.
In other words, the contracts practically amounted to an ex-
change of the Chicago property for the Boston property, each
party relying upon the property itself as the means of discharg-
ing the debt except for the sum of $10,000, for which each
respectively assumed personal responsibility to the other.
The contract having been made upon this basis and for this
purpose, and the use of the name of the wife being the result of
an agreement between the parties, the contention of the com-
plainants is reduced to the assertion that the contract must be
annulled because the parties agreed to make it, and because
its enforcement would bring about the very ends which they
intended should follow. The conclusion which we thus reach
upon the facts coincides with that of the court below. We
have omitted for the sake of brevity quotations from the testi-
mony, but the evidence of Meserve himself is so conclusive in

regard to the intention of the parties in making their contracts that we excerpt briefly from it at this point:

" Q. Can't you recall to your mind any reasons or circumstances leading to the taking of that bond from Mr. Brown? A. Yes; it was to hold me against a possible loss on those notes.

" Q. Can you recall any of the circumstances or reasons which led to the fixing of the amount of that bond? A. Well, in my own mind it seems probable.

" (Objected to.)

" Q. Will you state what those facts and circumstances were?

" (Objected to.)

" A. To make Mr. Brown's liability equal to my own. I had assumed about $10,000 in Chicago. My feeling was that he had assumed $39,000 there, and there could not possibly be a loss to that extent, if any. I did not feel that there would be any. I recollect it now as a sort of balance between us in our liabilities.

" MR. BURRY. All this is objected to.

" Q. As a matter of fact it was not equal to the difference, was it?

" (Objected to as leading and incompetent.)

" A. I knew my mortgages to be well-secured mercantile property that could not depreciate to any great extent; his was secured by vacant land.

" Q. Why did you take any bond at all, then? A. Because I was deeding to a straw grantee, to somebody that I did not know.

" Q. Well, why didn't you put in the bond the whole amount of the difference, at any rate? A. Because I knew there could be no possible way of making my security worthless by any handling it in three years; there could be no way; the property was insured, and the land was there, which had cost almost the amount of the notes. Had the buildings burned down, the land, with $10,000, would have been security for my note.

" Q. Did you inquire into the solvency of Mr. Brown? A. I did not.

"Q. Did you inquire into the solvency of Mrs. Brown? A. No.

"Q. Did you make any inquiries in relation to her? A. No. Mr. Brown's broker recommended him to be a business man who would be likely to take care of his property, and I regarded him as such.

"Q. Mr. Meserve, did you perform your contract in reference to protecting Mr. Brown against the indebtedness which you assumed?

"Mr. Burry. All this subject is objected to.

"A. No, sir.

"Q. Mr. Meserve, have you any pecuniary interests in the prosecution of this suit? A. Yes.

"Q. What is that interest? A. To furnish an offset for the suits he has against me, helping the matter to a settlement.

"Q. Have you ever paid anything on account of any of these offsets? A. No, sir.

"Q. When did you commence the prosecution of this suit? A. I don't know.

"Q. Did you ever employ any attorney to commence this suit. A. No, sir.

"Q. Have you ever paid anything or are you liable for anything by which you would suffer damage by reason of any failure of Mr. Brown to pay the indebtedness which is alleged to be due to the Episcopal City Mission under those mortgages?

"Mr. Burry. Objected to as calling for a legal conclusion.

"A. I have paid nothing.

"Q. Have you made an arrangement with the Episcopal City Mission by which they have substituted any liability on your part for the supposed liability against Mr. and Mrs. Brown or any arrangement in relation to that matter?

"(Objected to as calling for a legal conclusion.)

"A. I gave the authority to bring this suit with the understanding that it would relieve me of liability.

"Q. On those mortgages? A. Yes."

This testimony of Meserve makes it clear that he has paid

nothing on account of the mortgage on the Boston property which Brown, to the extent of his bond, undertook to discharge. The record makes it equally clear that Meserve has failed to carry out his assumption, in favor of Brown, of the mortgages on the Chicago property. In order to pay these mortgages assumed by Meserve, Brown has disbursed, as found by the lower court, the sum of $9122.63, leaving a considerable portion of the debt unpaid, and that some arrangement has been made by Brown with a third party looking to the discharge of this balance. It is insisted here that in discharging a portion of the debt Brown did not pay out in actual money the sum which he claims as an offset, but that part of his payments were made in securities which he has charged at their face value, while they would not bring that amount in the market, and it is urged that only the market value of these securities should be allowed him by way of set-off. It is also asserted that the interest which he has charged on his disbursements is excessive; and further, that inasmuch as the arrangement which he made for the payment of the balance of the debt did not involve the expenditure of any money on his part, he cannot set off that balance. All these arguments rest logically upon the proposition that Brown is only entitled to compensate against Meserve his actual disbursements made in the payment of the debt which Meserve assumed. We do not think it necessary to decide whether this position be sound or unsound. If it applies to Brown, it must apply with equal force to Meserve. As we have stated, it was intended by these parties that the obligations of each to the other should be correlative, and hence the contract resulting from the assumption by Meserve is as binding on him as is the assumption evidenced by the bond of Brown.

Now, if Brown be only entitled to set off as against Meserve the sum of money expended by him in paying the mortgages which Meserve assumed, it is clear that Meserve can only recover from Brown the sums actually disbursed by him in paying the mortgages which Brown assumed. This being so, as Meserve has paid nothing he can recover nothing, and there is an end of the case. If, on the other hand, the parties were

each entitled to enforce as against the other the sum of their respective obligations, without reference to the amounts disbursed by them in the discharge of those obligations, then, as the obligations assumed by Meserve towards Brown are equal if they do not exceed the amount of the bond given by Brown, the case is also at an end.

*Judgment affirmed.*