GAMBLE v. RURAL INDEPENDENT SCHOOL DIST. OF ALLISON et al.

RURAL INDEPENDENT SCHOOL DIST. OF ALLISON,
et al v. GAMBLE.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1906.)

Nos. 2,212, 2,300.

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—NEGOTIABLE MUNICIPAL BONDS—RIGHTS OF BONA FIDE PURCHASER.

A bona fide purchaser of negotiable bonds for value before maturity, and without notice of any infirmity therein, is entitled, as an incident to his ownership, to transfer the title to another, with all the rights with which he is vested; and such right, once accrued, is one of contract, which cannot be destroyed or impaired by state legislation.

[Ed. Note.—Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.]

2. SAME—IOWA STATUTE.

In 1888 the Legislature of Iowa enacted an amendment to section 2114 of Code 1873, by which it was provided that if negotiable paper "has been procured by fraud upon the maker no holder thereof shall recover thereon of the maker a greater sum than he paid therefor with interest and costs." Code 1897, § 3070. At the time of such enactment, a negotiable bond issued by an Iowa school district having statutory power to issue the same was held by an innocent purchaser for value, who, although the bond was fraudulently issued, was protected by the recitals therein, and both by the law merchant and the state statute entitled to recover its full face value. After its maturity such holder sold and transferred the bond for less than its face to complainant, who had knowledge of its fraudulent character. Held, that the statute could not affect the right of such holder to transfer the bond with all of her vested rights as an innocent purchaser, and that complainant succeeded to such rights, and was entitled to recover from the district the full amount of the bond and interest, regardless of the sum he paid therefor.

3. SCHOOL DISTRICTS—SUIT BY BONDHOLDER OF DIVIDED DISTRICT—EQUITY JURISDICTION.

Under Code Iowa 1873, § 1715, which provides that upon the division of an independent school district the assets and liabilities of the old district shall be equitably divided between the new districts, a suit by a bondholder of a district which has ceased to exist by reason of the subdivision of its territory into new districts, to enforce payment by the new districts, is within the equity judisdiction of a federal court.

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

For opinion below, see 132 Fed. 514.

Eric A. Burgess (Elbert H. Hubbard, on the briefs), for Gamble.

E. C. Roach, for Rural Independent School Dist. of Allison and others.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This is a proceeding in equity to compel the defendants to pay their proportionate and equitable share of two negotiable bonds, numbered, respectively, 43 and 46, each for $1,000, issued by the Independent school district of Riverside, their territorial predecessor. Pursuant to the provisions of chapter

146 F.—8

132 of the 18th General Assembly of Iowa, approved March 25, 1880 (Laws Iowa, 1880, p. 127), the Independent school district of Riverside, on February 15, 1882, issued 34 negotiable bonds, payable 10 years after that date, for the purpose, as stated, of refunding an outstanding bonded indebtedness of the school district. The bonds on their face, and over the signatures of the president and secretary of the board of directors of the district, contained the recital that they were—

"Executed and issued by the board of directors of said Independent school district in pursuance of and in accordance with chapter 132, Acts of the 18th General Assembly of Iowa, in conformity with a resolution of said board of directors passed in accordance with said chapter 132 at a meeting thereof held the 15th day of February, 1882."

In 1885 the territory embraced within the Riverside school district was divided into two districts—the Rural Independent school district of Allison and the Rural Independent school district of Jackson, the defendants herein. Its assets and most of its liabilities were divided between the two new districts, and its existence came to an end. At that time the bonds in question were not taken into consideration, or their payment provided for, because they were regarded void and unenforceable. The contention then was that the bonded indebtedness for the refunding of which the bonds in question were issued was fraudulent and void, and that the new issue created an indebtedness in excess of the permissible constitutional limit of 5 per centum of the value of the taxable property of the district, and was therefore void. Litigation ensued touching the validity of refunding bonds, and in the cases of Independent School District v. Rew, 111 Fed. 1, 49 C. C. A. 198; Fairfield v. Rural Independent School District, 116 Fed. 838, 54 C. C. A. 342; Salmon v. Rural Independent School District (C. C.) 125 Fed. 235, it was settled and declared that the recitation on the face of the bonds that they were issued "in pursuance of and in accordance with chapter 132, p. 127, Acts of the 18th General Assembly of Iowa," would have estopped the Riverside district, were it in existence, and estops the defendants, as its successors, from asserting as against innocent holders of the bonds for value that the district had no fundable debt, or that the new bonds created an indebtedness in excess of the constitutional limit. One Julia Spafford, in 1883 or 1884, purchased bond No. 43 from its former owner, paying its full face value therefor. She died in 1890, prior to the maturity of the bond, and her daughter, Mrs. Mason, by bequest from her mother, became owner of the bond, and after its maturity in 1901 sold it to complainant for the sum of $50. Some facts are disclosed in the record from which inferences are attempted to be drawn that Mrs. Spafford, or the agent acting for her at the time of the purchase of this bond, had knowledge that it, with other existing indebtedness of the district, exceeded the constitutional limit, but we are unable to find the fact to be so; and, after careful consideration of the evidence, agree with the conclusion reached by the trial court that she purchased the bond in good faith, relying upon the recital of conformity

to the law found on its face, and without notice of any defense thereto. Her daughter took the bond by inheritance, with all the valuable incidents attached to it in her mother's hands. Complainant purchased bond No. 46 before maturity for its full face value, and without notice of any defense thereto.

Section 2114 of the Iowa Code of 1873, which was in force at the time of the issue of the bonds in question, provided as follows:

"The want or failure in whole or in part of the consideration of a written contract may be shown as a defense, total or partial, as the case may be, except to negotiable paper transferred in good faith and for a valuable consideration before maturity."

But in the year 1888 the Legislature amended section 2114 by adding thereto the following words:

"Provided that if said paper shall have been procured by fraud upon the maker thereof, no holder of such paper shall recover thereon of the maker a greater sum than he paid therefor with interest and costs." Laws 1888, p. 129, c. 90.

These sections appear in the Code of Iowa (1897), as section 3070, and reads as follows:

"The want or failure in whole or in part of the consideration of a written contract may be shown as a defense, total or partial, except to negotiable paper transferred in good faith and for a valuable consideration before maturity, but if such paper has been procured by fraud upon the maker no holder thereof shall recover thereon of the maker a greater sum than he paid therefor with interest and costs."

The court below decreed in favor of the complainant on bond No. 43 the sum of $50, with interest thereon at the rate of 7 per cent. per annum from the date complainant acquired it, and on bond No. 46 the full face value thereof, with interest from its maturity. Both sides appeal to this court.

Complainant contends that he was entitled to the full face value of bond No. 43, with accrued interest, and defendants contend that the court below, as a court of equity, had no jurisdiction of the cause because complainant had an adequate remedy at law, and should have proceeded by an action at law instead of in equity. These questions will be considered in the order mentioned.

The Riverside school district was estopped, so far as Mrs. Spafford or her daughter was concerned, by the recital on the face of bond No. 43 from denying its validity, or their right to recover its full face value. In their hands the bond was purged of all infirmity or illegality. Story on Promissory Notes, § 191, and cases cited. They possessed, as an incident to the ownership of the bond, the right of free and unembarrassed alienation on terms satisfactory to them and the purchaser. So far the rights of the parties are not debatable, but the question is raised whether complainant, a purchaser of the bond from the daughter, takes it impaired in value by reason of his purchase of it after maturity, or whether he takes it with all the legal incidents or rights possessed by her.

Story, in his work on Promissory Notes (section 191), after referring to the rule of immunity against antecedent frauds enjoyed by

an innocent purchaser for value before maturity, and without notice of any infirmity, says:

"The same rule will apply, although the present holder has such notice, if he yet derives a title to the note from a prior bona fide holder for value. This doctrine * * * is indispensable to the security and circulation of negotiable instruments, and it is founded in the most comprehensive and liberal principles of public policy. No third person could otherwise safely purchase any negotiable instrument."

Daniel, in his first volume of Negotiable Instruments (section 803), says:

"It is to be observed further, that as a general rule the purchaser can never be placed on a worse footing than his transferror, although he himself could not in the first instance have acquired the vantage ground occupied by such transferror. And, therefore, even if he have notice that there was fraud in the inception of the paper, or that it was lost or stolen, or that the consideration has failed between some anterior parties, or the paper be overdue and dishonored, he is, nevertheless entitled to recover, provided his immediate indorser was a bona fide holder for value unaffected by any of these defenses. As soon as the paper comes into the hands of a holder, unaffected by any defect, its character as a negotiable security is established; and the power of transferring it to others, with the same immunity which attaches in his own hands, is incident to his legal right, and necessary to sustain the character and value of the instrument as property, and to protect the bona fide holder in its enjoyment."

In Cromwell v. County of Sac, 96 U. S. 51, 59, 24 L. Ed. 681, Mr. Justice Field, speaking for the Supreme Court, says:

"The rule has been too long settled to be questioned now, that whenever negotiable paper [and he was here speaking of dishonored municipal bonds] has passed into the hands of a party, unaffected by previous infirmities, its character as an available security is established, and its holder can transfer it to others with the like immunity. His own title and right would be impaired if any restrictions were placed upon his power of disposition."

In Wade v. Chicago, S. & St. L. R. Co., 149 U. S. 327, 344, 13 Sup. Ct. 892, 899, 37 L. Ed. 755, the Supreme Court, after citing Cromwell v. County of Sac, and many other cases, says:

"By the decisive weight of authority in this country, where negotiable paper has been put in circulation, and there is no infirmity or defense between the antecedent parties thereto, a purchaser of such securities is entitled to recover thereon, as against the maker, the whole amount, irrespective of what he might have paid therefor."

In Gunnison County Commissioners v. Rollins, 173 U. S. 255, 275, 19 Sup. Ct. 390, 397, 43 L. Ed. 689, affirming Rollins & Sons v. Board of Com'rs, 80 Fed. 692, 26 C. C. A. 91, 99, decided by this court, it is said:

"A bona fide holder of commercial paper is entitled to transfer to a third party all the rights with which he is vested, and the title so acquired by his indorsee cannot be affected by proof that the indorsee was acquainted with the defenses existing against the paper."

In Rondot v. Rogers Tp., 99 Fed. 202, 213, 39 C. C. A. 462, 473, Judge Taft, speaking for the Circuit Court of Appeals for the Sixth Circuit, in a case involving the enforcement of municipal bonds and coupons, says:

"The contention is that one who acquires negotiable paper after its maturity from one who bought it in good faith before its maturity may not enjoy the same immunity from equitable and other defenses as his transferror. This contention cannot be sustained."

He cites Cromwell v. County of Sac, supra, Scotland Co. v. Hill, 132 U. S. 107, 10 Sup. Ct. 26, 33 L. Ed. 261, and other cases.

The case we are now considering is one founded on legislation in which ample power was conferred to issue bonds pursuant to the provisions of the act referred to in the bonds, and what we have said or may say concern bonds of this character only, and can have no bearing upon the right to recover on bonds where power in the abstract to issue them did not exist. After Mrs. Spafford acquired bond No. 43, the act of 1888 was adopted, limiting the right of recovery on bonds "procured by fraud upon the maker," (as that bond, for the purpose of this case, is conceded to be) to the amount which the holder may have actually paid for it, with interest and costs.

It is contended that because complainant, Gamble, purchased the bond in 1901 from the legal successor of Mrs. Spafford for the sum of $50, that sum, with interest, is the maximum of his right of recovery in this case.

We are unable to agree with this contention. At the time the act of 1888 was passed Mrs. Spafford, both by the law merchant and by the statute of Iowa of 1873 (section 2114, ante), was the innocent holder for value of the bond, had a fixed and vested right of property in it, one which entitled her to recover its full face value at maturity, or one which she could alienate for a consideration based on the existence of that valuable right, and one which, in our opinion, she could not be, and was not, deprived of by the passage of that act. She or her successor in title exercised one of these incidental rights in 1901, and, probably induced so to do by the doubt which pending litigation cast upon her title, she sold it for a small sum. This circumstance, however, cannot be allowed to affect the principle involved. She conveyed, whether for $50 or $1,000, all the right she had in the bond, and that was, as already seen, the right to recover its full face value.

If the act of 1888 was intended by the Legislature to so retroact as to strike down this right, it was clearly an unwarranted and ineffective invasion of a vested right—an impairment of the obligation of the contract existing between Mrs. Spafford and the Riverside school district. Temple v. Hays, Morris (Iowa) 9; Jordan v. Wismer, 45 Iowa, 65; Schmidt v. Holtz, 44 Iowa, 446, 449; Lay v. Wissman, 36 Iowa, 305; Gelpcke v. City of Dubuque, 1 Wall. 176, 17 L. Ed. 520; County of Ralls v. Douglass, 105 U. S. 728, 26 L. Ed. 957; Green County v. Conners, 109 U. S. 104, 3 Sup. Ct. 69, 27 L. Ed. 812. The act of 1888 undoubtedly placed a restriction upon the exercise of an existing right of alienation, made it less valuable, because it cut down one of its most valuable incidents, and if, as said by Mr. Justice Field in Cromwell v. County of Sac, supra, the holder's "title and right would be impaired if any restrictions were placed upon his power of disposition," surely Mrs. Mason's title and right were impaired by the statute, which so materially affected the salable value of

her bond. If the act of 1888 was intended to affect the remedy only, and thereby to escape constitutional condemnation, it was equally ineffective to destroy such a right as Mrs. Spafford possessed to bond No. 43 at the time of its passage.

No change of remedy, so called, can impair an existing substantial right fixed by contract. The Supreme Court in Von Hoffman v. City of Quincy, 4 Wall. 535, 553, 18 L. Ed. 403, says:

"It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired."

In Seibert v. Lewis, 122 U. S. 284, 294, 299, 7 Sup. Ct. 1190, 1194, 1197, 30 L. Ed. 1161, it is said:

"It is well settled by the decisions of this court that the remedy subsisting in a state when and where the contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is therefore void. * * * It is within the power of the state to change the remedy as long as it does not essentially affect the right embodied in the contract."

To the same effect is Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793, Barnitz v. Beverly, 163 U. S. 118, 16 Sup. Ct. 1042, 41 L. Ed. 93.

This court, in Harrison v. Remington Paper Co. (C. C. A.) 140 Fed. 385, after full consideration and citation of authorities, sums up the doctrine thus:

"The remedies for the enforcement of a contract existing in a state when the contract is made are a part of its obligation. Any repeal or change of any of these remedies, which substantially obstructs or retards its enforcement or lessens the value of the agreement, impairs its obligation, and is unconstitutional and void."

From the foregoing, we reach the conclusion that the trial court erred in limiting complainant's recovery on bond No. 43 to the amount paid by him therefor. He was clearly entitled to the face value of the bond, with interest thereon from its maturity.

If the Riverside district, which issued the bonds, had remained in existence, complainant's remedy would be clear—a simple action at law, founded on the promise of the school district—but after the bonds in question had been issued by the district, it was divided into two constituent districts, the defendants herein. No question is made in argument or brief as to the legality of this subdivision, or as to many of the legal incidents resulting therefrom. Upon the division of its territory into two independent districts, the Riverside district ceased to exist as a corporation, and its liabilities devolved, not by any express statutory provision to that effect, but from the reason and necessity of the case, upon the two constituent districts. All school property was then and now exempt from execution, and could therefore not be resorted to for the payment of any of the debts of the district. By the dissolution of the old district, its power to levy taxes for paying its debts ceased. The new districts alone had that power. The same property and persons which were originally subject to taxa-

tion for the payment of the debts of the original district went over as property and persons subject to the authority of the constituted agents of the new districts. The liability which attached to them when in the old district equitably followed them in the changed form of their corporate existence. These principles have been recognized and accepted, not only in Iowa, but elsewhere. Stevenson v. Dist. Tp. of Summit, 35 Iowa, 462; Dist. Tp. of Knoxville v. Ind. Dists. of Liberty et al., 36 Iowa, 220; Knoxville Nat. Bk. v. Independent Dist. of Washington, 40 Iowa, 612; Kennedy v. Ind. School Dist. of Derby Grange, 48 Iowa, 189; Dist. Tp. of White Oak v. Dist. Tp. of Oskaloosa, 52 Iowa, 73, 2 N. W. 965; Dist. Tp. of Clay v. Ind. Dist. of Buchannan, 63 Iowa, 188, 18 N. W. 859; Fairfield v. Rural Independent Dists. (C. C.) 111 Fed. 108; Morgan v. Beloit, 7 Wall. 613, 19 L. Ed. 203; Broughton v. Pensacola, 93 U. S. 266, 23 L. Ed. 896; Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699; Shapleigh v. San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310. There was no privity of contract between complainant or any holder of the bonds of the old district and the new constituent districts. See cases, supra. At best, the law provided for an assumption of those debts by the new districts. Such an assumption by a third party of the debt of another does not ordinarily create a legal liability which the creditor, not a party to the agreement of assumption, can assert against him in an action at law. As his right does not rest on privity of contract, but is purely equitable, he is required to resort to equity to enforce it. Whatever may be the decisions of state courts (and we admit they are contradictory on this question), the rule of the national courts is clear and uniform. Keller v. Ashford, 133 U. S. 610, 622, 10 Sup. Ct. 494, 33 L. Ed. 667; Willard v. Wood, 135 U. S. 309, 314, 10 Sup. Ct. 831, 34 L. Ed. 210; Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 190, 12 Sup. Ct. 437, 36 L. Ed. 118; Constable v. Nat. Steamship Co., 154 U. S. 51, 73, 14 Sup. Ct. 1062, 38 L. Ed. 903; Willard v. Wood, 164 U. S. 502, 519, 17 Sup. Ct. 176, 41 L. Ed. 531; Episcopal City Mission v. Brown, 158 U. S. 222, 15 Sup. Ct. 833, 39 L. Ed. 960; Winters v. Hub Min. Co. (C. C.) 57 Fed. 287, 289; Knapp v. Conn. Mutual Life Ins. Co., 85 Fed. 329, 332, 29 C. C. A. 171, 40 L. R. A. 861; Green v. Turner, 86 Fed. 837, 30 C. C. A. 427; Mercantile Trust Co. v. Baltimore & O. R. Co. (C. C.) 94 Fed. 722, 725.

Not only did the equity of the creditor, resting on the ground just stated, exist in favor of the complainant in this case, but by the statute of Iowa in force in 1885, when the subdistricts were created (section 1715 Code Iowa 1873), there was to be an "equitable division of assets and liabilities" between the constituent districts. That equitable division would reasonably, and we think necessarily, involve an inquiry into taxable property and population of the two districts. Their equitable shares of the debts would depend largely upon the resources possessed by them, respectively, for raising money to pay them, and this could only be done by taxation. It is true the parties in the progress of the trial stipulated that a fair division of liabilities between the defendants was in the proportion of two-thirds for the district of

Allison and one-third for the district of Jackson. This stipulation as to one of the important facts of the case cannot affect the equitable jurisdiction of the court over the case if it existed when the suit was instituted. It very laudably saved time and expense in making proof of facts from which such equitable division might be made.

In Kennedy v. School Dist., supra, which was a bill in equity to secure payment from several subschool districts of a debt contracted by its predecessor before the subdivision, the Supreme Court of Iowa, after giving reasons for entertaining jurisdiction in equity like those heretofore adverted to, says: "That a court of equity should have jurisdiction in such an action, we have no doubt."

In Fairfield v. Rural Independent School Dists., supra (a case involving the same issue of bonds now under consideration), Judge Shiras makes use of the following language:

"This apportionment [between the two constituent districts] cannot be properly made in a trial at law before a jury, but can only be reached through a proceeding in equity wherein the court will ascertain and decree the amount due the creditor from the original district, and will then apportion and decree the parts of this sum that are chargeable against each of the several independent districts."

In Mt. Pleasant v. Beckwith, supra, it is held that when a municipal corporation is legislated out of existence, and its territory merged into several other corporations, the latter become liable for a proportionate share of the debts of the former, and vested with its power to levy taxes upon the property transferred and the persons residing thereon, for the purpose of raising money to pay such debts, and that the remedy of creditors of the old corporation is in equity against the corporations succeeding to its property and powers.

In the case of Morgan v. Beloit, supra, a question arose concerning the liability of two municipal corporations for the payment of bonds issued by one of them prior to the organization of the other, the latter embracing the territory of the former. The Supreme Court, in disposing of the case, says:

"The authority to tax for the payment of municipal liabilities in cases like this is in the nature of a trust. The jurisdiction of a court of equity to interfere in all cases involving such an ingredient is too clear to require any citation of authorities. It rests upon an elementary principle of equity jurisprudence."

We find nothing in the case of Shapleigh v. San Angelo, supra, inconsistent with the views expressed in the cases just cited. The old city of San Angelo was superseded by a new corporation, embracing substantially the same territory and corporators as the old one had. The Supreme Court held that the Legislature intended a continued existence of the same corporation, and that, in the absence of express provision otherwise, it will be presumed that the Legislature intended that the liabilities as well as the rights to property of the old corporation should accompany the new. We find no discussion in that case of the question whether the remedy of the creditor is by action at law or in equity. Moreover, it is obvious that the facts of that case are entirely different from the facts of the one before us, where two

separate school corporations, with different territory, different taxable values, and different populations, are substituted for one which originally incurred the debt sued on.

We conclude that the trial court correctly held that it had jurisdiction in equity of this cause, but that it erred in not decreeing to complainant the face value of bond No. 43, with simple interest thereon at the rate of 7 per cent. per annum from its maturity to the date of the decree. It should also have decreed in favor of complainant the further sum of $35, represented by coupon No. 20 on bond No. 43, with interest thereon from its maturity to the date of the decree. In all other respects the conclusions reached by the learned trial judge are approved.

It results that the decree must be reversed, and the cause remanded to the trial court, with directions to enter one in accordance with the conclusions just stated.