### FISH v. FIRST NAT. BANK OF SEATTLE, WASH.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1907.)

No. 1,187.

**1. PARTNERSHIP—RETIREMENT OF PARTNER—ASSUMPTION OF DEBTS BY CONTINUING PARTNER—EFFECT—RIGHTS OF CREDITORS TO SUE.**

Articles of partnership recited that one of the partners had given his promissory note for money borrowed and used for the benefit of the partnership, and provided that the same should be a partnership obligation. Before the maturity of the note the partnership was dissolved, and the other partner who succeeded to the business and property assumed all of the partnership liabilities. *Held* that, under such agreements construed together, such partner became directly liable for the payment of the debt, and that under Carter's Code, Alaska, p. 145, § 1, which abolishes the distinction between actions at law and suits in equity, the holder of the note could maintain an action in his own name against him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 495–499; vol. 11, Contracts, § 800.]

**2. CONTRACTS—ACTION—DEFENSES.**

A creditor who sues on a contract made by a third person with the debtor to assume and pay the debt does so subject to all the equities existing between the original parties to the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 800.]

**3. MORTGAGES—RIGHT TO SUE ON DEBT—TRANSFER OF DEBT—EFFECT AS TRANSFER OF SECURITY.**

On the dissolution of a partnership, the partner who succeeded to the property assumed payment of a note which had been given by the other partner for money that went into the partnership, and which he secured by a conveyance to the payee of property, which also went into the partnership, and passed to the succeeding partner, subject to the lien. The note was transferred by the payee. *Held*, that the fact of such conveyance was no defense to an action by the transferee against the succeeding partner to recover the debt; the conveyance being in effect a mortgage which passed to the plaintiff by the assignment of the note, and would be extinguished by payment of the debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 568–584.]

In Error to the District Court of the United States for the Third Division of the Territory of Alaska.

The defendant in error, the plaintiff in the court below, alleged in its complaint: That on December 18, 1902, I. H. Loomis made a promissory note for $5,000 to the order of S. G. Simpson, payable one year from date in Seattle, with interest at 10 per cent. That on February 5, 1903, the said Loomis and

Oscar Fish, the plaintiff in error, entered into a partnership agreement to transport freight and passengers from Valdez into the interior of Alaska, and to sell goods, wares, and merchandise. That in the agreement, it was recited that Loomis had contributed to the firm a stock of goods and transportation outfit of the value of $7,600. Then followed this clause: "In the purchase of said merchandise the said Loomis incurred an indebtedness of $5,000 evidenced by a promissory note for the said amount payable to Sol G. Simpson of Seattle on or about December 12, 1903, which said indebtedness is hereby assumed by the partnership hereby formed. Said Fish agrees to contribute from time to time, as it may be needed by the said partnership, the sum of $2,600." That on May 4, 1903, the defendant in error purchased the said promissory note in due course of business. That on June 10, 1903, Loomis and Fish dissolved their partnership, and in the agreement of dissolution it was provided: "It is further mutually agreed that the said Oscar Fish shall take into his possession and control all of the assets of the said partnership, and shall have the right to sell and otherwise dispose of the same according to the best of his judgment; and, in consideration thereof, the said Fish agrees to pay, and does hereby assume, the liabilities of the said partnership at this date." The complaint further alleged that the said promissory note was given by Loomis to Simpson in consideration of $5,000, and that the sum so borrowed by Loomis was used in the purchase of the goods, wares, and merchandise, which were turned over by Loomis to the partnership.

The action was brought against Loomis and Fish, but the former made no appearance. Fish demurred to the complaint on the grounds of misjoinder of parties defendant, defect of parties plaintiff, and the failure of the complaint to state a cause of action against him. The demurrer was overruled. Fish answered, denying some of the allegations of the complaint, and setting up three affirmative defenses: First, that there was misjoinder of causes of action: that an action upon a negotiable promissory note made by Loomis to Simpson was joined with a cause of action which, if available to any one, was in favor of Simpson alone. Second, in substance, that at the time when the promise of the partnership was made with Loomis to pay his debt to Simpson, the latter held the legal title to certain lots in Valdez of the value of $2,738.04, which had been conveyed to him by Loomis under an agreement that the former was to hold them as security for the payment of the debt which was thereafter assumed by the partnership, and that the lots had been transferred by Loomis to the partnership, and by the partnership upon its dissolution to Fish, who was the owner of them subject to the lien of Simpson; that at the time of the formation of the copartnership Loomis had a contract with Simpson for carrying freight for him from Valdez into the interior of Alaska at 30 cents per pound, the freight money for which was to be credited on the indebtedness from Loomis to Simpson and on the said promissory note; that this contract was transferred to the copartnership at the time of its formation, and as a part of the whole transaction; that thereafter the copartnership transported freight for Simpson, and earned thereby $2,654.15 freight money; that after the dissolution of the partnership, Fish made lasting and valuable improvements on the Valdez lots in the sum of $544.04; that at the time when the copartnership was made, and the indebtedness to Simpson was assumed by it, Loomis stated to Fish as an inducement for such assumption, that the note was not negotiable and could not be transferred; that, relying upon that statement, and upon the statement that the amount due for freight would be credited on the note, and that when the note was paid, Simpson would reconvey the lots, Fish assented to the assumption of the indebtedness. The third defense in addition to alleging facts substantially set forth in the second defense averred: "That neither the partnership nor Fish ever had any intention of securing the payment of the negotiable note mentioned in the complaint."

The affirmative matter in the answer was demurred to on the ground that it stated no facts sufficient to constitute a defense and the demurrer was sustained. The case was tried before the court without a jury. The findings of the court sustained all the allegations of the complaint and judgment was rendered for the defendant in error for the full amount due upon said promissory note.

Ostrander & Donohoe, Goodell & Edwards, and Pillsbury, Madison & Sutro, for plaintiff in error.

James Kiefer and Brown & Smith, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Did the bank, as owner before maturity, of the negotiable promissory note, have a cause of action against Fish by virtue of the partnership agreement between Fish and Loomis, or by virtue of the agreement of dissolution, or both? In the partnership agreement, it was recited that the note was given for money which was used by Loomis to purchase the goods and merchandise which he transferred to the copartnership, and that the indebtedness was assumed by the partnership. In the dissolution agreement, which was made four months later, all of the assets of the partnership were turned over to Fish, and he assumed the liabilities of the partnership. At the time of the dissolution, the promissory note was not due, and, in determining what liabilities were assumed by Fish, the two agreements should be read together; and, when so read, it is obvious that the indebtedness on the note was a liability which Fish expressly promised to pay.

At common law, the right of a plaintiff to sue in assumpsit in his own name upon the promise contained in an agreement not under seal, if made for his sole benefit, although he was not a party to the contract, was generally recognized. Hendrick v. Lindsay et al., 93 U. S. 143, 23 L. Ed. 855. In the case just cited, the court said:

"But the right of a party to maintain assumpsit on a promise not under seal made to another for his benefit, although much controverted, is now the prevailing rule in this country."

As to what contracts are, and what are not, made for the benefit of a third person, within the meaning of this rule, there is much diversity of opinion, and the decisions are not reconcilable. But it is universally held, so far as our observation goes, that the promise made by the purchaser of property to the seller to pay, as part of the consideration therefor, a specified debt due from the seller to a third person, is a promise made for the sole benefit of such third person, and one upon which he may maintain an action. In such a case, the third person is privy in fact to the promise and the consideration. In Austin v. Seligman, 18 Fed. 519, 21 Blatchf. 506, a case in which a copartnership transferred its assets to a purchaser, and the latter assumed partnership debts, Wallace, Circuit Judge, said:

"If, upon such a transfer, the purchaser assumes to pay certain specified creditors or certain enumerated debts of the seller, it may be fairly urged that the parties contemplate a direct liability to the specified creditor on the part of the purchaser."

Among cases sustaining this general doctrine are the following: Barker v. Pullman's Palace Car Co. (C. C.) 124 Fed. 555; Bassett v. Hughes, 43 Wis. 319; Grant v. Diebold Safe & Lock Co., 77 Wis. 72, 45 N. W. 951; Redelsheimer v. Miller et al., 107 Ind. 485, 8 N. E. 447; Potts v. First Nat. Bank of Gadsden, 102 Ala. 286, 14 South. 663;

Snell et al. v. Ives, 85 Ill. 279; Lovejoy v. Howe, 55 Minn. 353, 57 N. W. 57; Delp v. Brewing Co., 123 Pa. 42, 15 Atl. 871.

There is other ground upon which the promise of the plaintiff in error may be enforced. When he made his promise to Loomis to assume the debt, he became, as between himself and Loomis, the principal, and the latter became his surety. Said the court, in Keller v. Ashford, 133 U. S. 610–623, 10 Sup. Ct. 494, 497, 33 L. Ed. 667:

> "If one person agrees with another to be primarily liable for a debt due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled in equity to be substituted in his place for the purpose of compelling such principal to pay the debt."

The principle so announced was, in that case, applied to the contract of a purchaser of mortgaged property who had assumed the payment of the mortgage debt. It was reaffirmed in Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, 34 L. Ed. 210, in which case the court recognized the remedy of a mortgagee against a grantee of the mortgagor to enforce such an agreement, and held that the question whether the remedy is at law or in equity must be governed by the lex fori. In Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118, it was said:

> "The grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor toward the mortgagee as well as between themselves is thenceforth that of principal and surety for the payment of the mortgage debt."

In Johns v. Wilson, 180 U. S. 440, 21 Sup. Ct. 445, 45 L. Ed. 613, it was held that, under the practice in Arizona, the grantee of a mortgagor, who has agreed to pay the notes secured by a mortgage, may be held liable for a deficiency upon the sale of the mortgaged premises in a direct action at law by the mortgagee. The Code of Civil Practice for Alaska (Carter's Code, p. 145, § 1), abolishes the distinction between actions at law and suits in equity. Madden v. McKenzie (C. C. A.) 144 Fed. 64. The complaint in this case, while not ostensibly framed as a complaint in equity, contains all the necessary averments of a bill to enforce the execution of the promise made by the plaintiff in error to Loomis, and it would be sufficient, we think, to support the judgment which was rendered by the trial court.

It is contended that the trial court erred in sustaining the demurrer to the answer which it is said sets up equitable defenses to the action. Whether the remedy of the third party is at law or in equity, he cannot acquire a better standing to enforce the assumption of the debt than that occupied by the original parties to the contract. His right of action is subordinate to their rights, and, if he avails himself of the contract, he will be affected by the equities growing out of the contract between them. Said the court, in Dunning et al. v. Leavitt, 85 N. Y. 30, 35, 39 Am. Rep. 617:

> "There is no justice in holding that an action on such a promise is not subject to the equities between the original parties springing out of the transaction or contract between them."

In Malanaphy v. Mfg. Co., 125 Iowa, 719–723, 101 N. W. 640, 641, 106 Am. St. Rep. 332, it was said:

"Among other limitations, the party to be benefited becomes subject to all inherent equities arising out of the contract as affecting the principal parties one with the other. This follows naturally from the relation of privity which the law implies."

In Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198, the court said:

"It is clear that on principle such right cannot be broader than the party to the contract [through whom the right of action is derived] would have in event of its breach * * * such beneficiary cannot acquire a better standing to enforce the agreement than that occupied by the contracting parties themselves."

Of the same import are the following: Episcopal City Mission v. Brown, 158 U. S. 222, 15 Sup. Ct. 833, 39 L. Ed. 960; Trimble v. Strother, 25 Ohio St. 378; Green v. McDonald et al., 75 Vt. 93, 53 Atl. 332; Clay v. Woodrum, 45 Kan. 116, 25 Pac. 619; Hargadine Mc-Kittrick Dry Goods Co. v. Swofford Bros. Dry Goods Co. (Kan.) 70 Pac. 582; Benedict v. Hunt, 32 Iowa, 27; Heath v. Coreth (Tex. Civ. App.) 32 S. W. 56. The fact that the present action was brought by the holder of a promissory note acquired before maturity cannot affect the question of the applicability of the rule. The name of the plaintiff in error is not upon the note as maker, guarantor, or indorser or otherwise. His promise to pay was not relied upon or known by the defendant in error when it took the note, and the latter is in no better attitude to enforce the promise to assume its payment than would be the original promisee.

But we find no equities set forth in the answer which may be interposed in defense of the demand of the defendant in error. If the note had been in fact non-negotiable, as the answer avers it was represented to be, the plaintiff in error would thereby be in no better position so far as his equitable defenses are concerned. The mortgage to Simpson, which it is alleged incumbers the land of the plaintiff in error, is in equity transferred to the defendant in error by its purchase of the note, and when the note is paid, the mortgage will thereby be satisfied. The answer makes no allegation as to the disposition which has been made of the freight money earned under the contract with Simpson. That money is not alleged to have been paid to Loomis, and it is not perceivable from any averment in the answer that it could have been so paid. For aught that appears to the contrary in the answer, that money may have been paid to the plaintiff in error, or is now a recoverable asset payable to him.

The judgment is affirmed.